## In re BOURLIER CORNICE & ROOFING CO.

(District Court, W. D. Kentucky. January 3, 1905.)

1. BANKRUPTCY—EXPENDITURES—COSTS OF ADMINISTRATION.

Expenditures made by a receiver and trustee of a bankrupt's estate for the sole benefit of general creditors, in carrying out contracts of the bankrupt which were thought to be profitable, are not "costs of administration," within Bankr. Act July 1, 1898, c. 541, §§ 62, 64 (30 Stat. 562, 563 [U. S. Comp. St. 1901, pp. 3446, 3447]), requiring such costs to be paid out of the estate in which they are incurred as preferred claims.

2. SAME—LANDLORD'S LIEN—PRESERVATION.

Where property belonging to a bankrupt more than sufficient to pay a landlord's lien for unpaid rent thereon was sold under an agreement with the trustee that the lien should be transferred to the fund arising from

the sale, the lien was preserved, and attached to such fund for the benefit of the landlord.

**3. SAME—BANKRUPT'S BUSINESS—CONTINUANCE—EXPENDITURES—LIEN CLAIMS —PRIORITY.**

A bankrupt's receiver and trustee were empowered to continue the bankrupt's business for the benefit of general creditors, as authorized by Bankr. Act July 1, 1898, c. 541, § 2, cl. 5 (30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]), by a referee's order providing that the trustee should have a first lien on all the bankrupt's property for what he might advance for expenditures in so doing. The trustee continued the business, and in so doing made expenditures in addition to using a fund derived from other assets subject to a landlord's lien, and on completion of the contract received a fund therefrom which was subject to a mechanic's lien. *Held* that, neither of the lien creditors having consented to such expenditures or to the continuance of the business, their claims were payable from the fund derived from the contract prior to the claim of the trustee for additional expenditures.

In Bankruptcy.

A. G. Ronald, for G. W. Ronald.

John Marshall and A. S. Brandeis, for W. R. Root, administrator.

W. W. Watts and J. G. Sachs, for trustee.

EVANS, District Judge. Certain creditors of the Bourlier Cornice & Roofing Company, on the 27th day of May, 1902, filed their petition praying, upon grounds stated therein, that the debtor might be adjudicated a bankrupt. On May 28, 1902, the following order was made by the court in that proceeding:

"Came the Columbus Slate Company, Robert Douglass, and Francis L. Minton, trustees of the estate of R. G. Dun, and carrying on the business of R. G. Dun & Co., and the Louisville Tin & Stove Company, petitioning creditors, and file their petition herein, seeking the appointment of a receiver to take charge of the assets of this estate and preserve the same, and to provide for the fulfillment of certain contracts involved in this estate, and filed the affidavits of Al. Bourlier, E. C. Hamsley, Charles Hamsley, and Emile B. Bourlier in support thereof; and thereupon the said petition was set for hearing for Thursday, May 29, 1902, at 10 o'clock a. m."

On the next day, May 29th, in view of the well-known reluctance of this court to appoint receivers, unless, in the language of the bankrupt act, it should be "absolutely" necessary, a very strong representation was made to it by the applying creditors as to numerous uncompleted contracts which the debtor was endeavoring to execute, and the strong and confident expectation of those interested that those contracts would certainly yield a large profit, and in this way be very beneficial to the general creditors. The court was so far convinced that, in its order that day made after filing the consent of the debtor to be adjudicated a bankrupt as prayed for, and after making the adjudication accordingly, it also adjudged as follows:

"This cause coming on to be heard upon the petition of the Columbus Slate Company, Robert D. Douglass, and Francis L. Minton, trustees of the estate of R. G. Dun, and carrying on the business as R. G. Dun & Co., and the Louisville Tin & Stove Company, petitioning creditors herein for the appointment of a receiver herein, and the bankrupt having filed in court a consent in writing to an immediate adjudication and order of reference herein, and divers creditors having joined in said application for such appointment of such receiver, and the court being fully advised thereof, it is

now ordered that said motion to appoint a receiver herein be, and the same is hereby, sustained.    It is therefore ordered that George L. Martin, of Louisville, Kentucky, be, and he is hereby, appointed receiver of the estate herein, to take charge of, preserve, and hold the property of the bankrupt, the Bourlier Cornice & Roofing Company, to insure the same in a reasonable sum, and in so far as he can to continue the work under the contracts involved in this estate, and to use such material and property herein as may be proper to use therein, and such receiver shall continue in office until the election of a trustee herein.    Said receiver is further authorized and empowered to collect, receive, and receipt for any and all moneys that may be due or owing to the said bankrupt, and he shall make a report of his acts and doings herein, and report to the court from time to time as said work progresses.    Before entering upon his duties as receiver herein he shall execute bond to the United States of America in the sum of $5,000 for the faithful performance of his duties herein.    And thereupon came the said George L. Martin, as such receiver, with the Bankers' Surety Company of Cleveland, Ohio, as surety, and executed such bond, and said bond is now hereby approved, and the clerk of this court is ordered and directed to file the same in the record of this cause."

This phase of the case in none of its bearings was ever again brought to the attention of the court, nor did the judge make any order upon it until the pending petitions for review were argued.    Although not so stated by the referee in his certificate, it will be observed that in the order of May 29, 1902, there was inserted, in accordance with the positive directions of the court, the express provision that "such receiver shall continue in office until the election of a trustee herein."    As certified by the referee, a trustee was appointed by the creditors on the 25th day of June, 1902.    The receivership expired on that day eo instanti the appointment of the trustee, and while some hundreds of dollars were paid out by the receiver as indicated by his reports, it appears that very little was done by the receiver, as such, in the way of carrying out any of the running contracts.    So that so far as the receivership was concerned it seems to cut little figure in the questions raised on the pending petitions for review.    It appears from the original certificate and from the amended certificate of the referee filed herein pursuant to the order entered, pending the consideration of the petitions for review, on the 15th day of December, 1904, that the next day after the appointment of the trustee (who happened to be the same person as the receiver) the trustee applied to the referee for orders to be allowed to continue the execution of the contracts, it being hoped, expected, and represented by him that profits could be earned for the benefit of the general creditors.    The referee, at a meeting duly called, yielded to the views of the trustee, and, no creditor objecting, made orders accordingly, and in the course of the order on the subject appears to have provided that the trustee should have a "first lien" on all the bankrupt's property for what he might advance for expenditures in executing those orders. Instead of profits, however, large losses resulted from the effort.

There was nearly $3,000 worth of property on the premises leased by the bankrupt from Dr. G. W. Ronald.    This was sold, and by consent and agreement of parties the landlord's lien for about $350, balance due for rent, was transferred to the fund arising from the sale.    Other assets added to this, when all were sold, yielded a fund of about $3,350, which long ago came in cash into the hands of the trustee.    Without paying the rent, the entire fund appears to have been exhausted by the

trustee in his operations. The claim of Dr. Ronald had been proved as a secured debt, and under those circumstances he had no right to vote at the general creditors' meeting, and in fact he took no part therein nor in those proceedings by which the trustee was authorized to execute the contracts of the bankrupt.

G. R. Root had a contract to furnish the slate needed under one of the contracts of the bankrupt with the Louisville Water Company, and had done so, and, he having died, his administrator claimed, as against the water company as well as the bankrupt, a mechanic's lien for about $1,400, which I may here say could properly work itself out through the indebtedness of the water company to the bankrupt of about $1,700. I agree with the referee that Root had and has a valid mechanic's lien. He is therefore entitled to be paid out of the avails of that indebtedness, unless he has done, or the referee and the trustee have done, something to deprive him of that right in favor of the trustee. Upon one occasion a question was brought up to the judge upon a petition for a review as to whether Root should be made a party defendant to this proceeding. It was a simple question, and as he claimed an interest in a fund also claimed by the trustee in right of the bankrupt, I found no difficulty in holding under section 2, cl. 6, of the bankruptcy act of July 1, 1898, c. 541 (30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]), that he was a proper party, and should be made a defendant; but that was the extent of the ruling. Root, however, brought suit against the Louisville Water Company in the state court for the enforcement of his lien on the property of that company, and preferred not to file any proof of debt, either secured or unsecured, in this proceeding. But after being made a party he came in by petition, setting forth his claim to a lien upon the money due from the water company, that company having also answered admitting its indebtedness, and expressing its willingness to pay the money in any way that would be safe and give it proper protection. On hearing the contest between these parties, the referee adjudged that the trustee should be repaid the advances he had made in executing the bankrupt's contracts before either Ronald or Root could be paid at all, and they have filed the pending petitions for reviewing that ruling.

I have no doubt that Dr. Ronald had and was entitled to a lien as landlord for the balance due him for the rent of the premises occupied by the bankrupt, nor any doubt that his lien was transferred to the money derived from the sale of the personalty on the premises pursuant to the agreement referred to, and of which agreement the trustee had full knowledge, inasmuch as he was a party to it. It must be apparent that Dr. Ronald's claim was secured many times over by the personalty sold, and it is matter of some surprise that he was not paid out of the proceeds. It is palpable that he was entitled to have his money paid promptly, and equally palpable that the trustee should not have spent it for the sole benefit of the general creditors, and in efforts to make a profit for them. In this latter question Dr. Ronald could not have had any interest, and his rights should not have been put in jeopardy.

I am entirely satisfied that Root did not consent to any of the orders made by the referee regarding the carrying out of the contracts referred to, nor in any way participate in procuring them. When those orders

133 F.—61

were made he was not before the court, and was at last made a party over his protest. Root is therefore not estopped from asserting his superior right to the fund not yet in the hands of the trustee, but upon which fund Root's lien rests. So that the real contest is between Root and Ronald, claiming under their respective liens on one side, and the trustee, claiming the first lien upon the water company fund under the referee's orders on the other. Hardship must come upon one or the other of these defendants, and I am to decide which of them shall bear it. I find it a most unpleasant duty. Root has a lien beyond question, and so had Ronald. Each of those liens was based upon a clear legal right, which was perfect before any claim of the trustee could possibly have arisen. Neither Root nor Ronald had any interest in the effort of the trustee to make profits for the general creditors. On the other hand, Martin, the trustee, under the directions of the referee, and under the referee's order of June 26, 1904, which purported to give him a "first lien," expended the money he seeks to have repaid out of the fund yet to come from the water company. Such repayment, however, is sought not to the prejudice of those in whose interest the trustee was working, viz., the general creditors, but of those whose interests he was in fact destroying, viz., the lien creditors. Whenever the money is paid in by the water company, it will come charged with Root's mechanic's lien, and the water company when paying it should be cleared from all liability respecting it. Ronald never had a lien on this fund. His lien was on the property on the premises, and was, by agreement between him and the trustee, transferred to the proceeds of the sale of that property. That fund was spent by the trustees in despite of that agreement, and the trustee probably on his bond is liable for it. It is therefore proper and equitable to pay it out of the fund to come from the water company before the trustee gets any of that fund in payment of his expenditures.

It should not be forgotten that any effort by the general creditors or by the trustee in their behalf to make profits by continuing to execute the outstanding contracts of the bankrupt was exerted solely in the interest of the general creditors. The secured creditors, to whom this was immaterial, relying upon their liens, had no interest in the venture of the trustee undertaken for the benefit of the general creditors, and without their express consent the lienors should not be regarded as having put to hazard their interests in the bankrupt's assets—a hazard for incurring which they received no consideration. True, section 2, cl. 5, Bankr. Act (30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]), as it was in force in June, 1902, gave the court power to authorize a trustee to conduct, for a limited period, the business of the bankrupt; but I am much inclined to think that a referee should never permit a procedure for the carrying into effect of the unexecuted contracts of a bankrupt, to be commenced upon the initiative of the trustee. Much abuse of the power might be avoided and temptation for the trustee removed by putting that burden on the creditors. Such authorization should generally be made upon the application of some or all of the general creditors. It should never be made if carrying it into full effect would be at the expense of secured creditors who have no interest in the question and who make no request for such authority. Indeed,

the claims of secured creditors should, if possible, be fully paid or provided for before the trustee or the general creditors are permitted, except in a very small way, to embark in any venture of that sort. Of course, after the secured creditors are paid, the general creditors are in practical control of the estate, and, if willing to take risks, may be indulged by the referee in proper instances, for they alone are concerned. But whether these general views are sound or not as to the proper course to be pursued by the referee in such cases, another course was in fact pursued here, though with unfortunate results. I think it was the duty of the trustee, under the circumstances disclosed in this case, to have clearly brought before the referee the fact that his expenditures were trenching upon the fund upon which others claimed liens, and to have sought specific instructions in that contingency, even to the extent of bringing the question before the judge if necessary. I think his not doing this, but going on at a loss after expending everything on hand, was, to say the least, improvident and greatly to his disadvantage in the present contingency. However this may be, the referee thought and adjudged that the trustee's claim for advances made under the referee's order were not only entitled thereunder to be a "first lien" on the fund in the water company's hands, but that these advances were parts of the "costs of administration," and to be allowed before the payment even of secured claims. I think, in the first place, that neither Ronald nor Root was in any wise bound by the order of the referee giving the trustee a "first lien" for advances. Ronald and Root were not parties to such of the proceedings as resulted in that order, nor did it concern either of them. As I find in the statute no provision authorizing it, I doubt the power and jurisdiction of the referee to make such an order, so far, at least, as it may affect the rights of Root and Ronald; for, if the trustee has a right to priority of payment as against them, it is not upon the ground that the referee could give or validly create a first lien on the assets by his order, but because the statute gives the right of priority, if it exists at all, upon the ground that the trustee's expenditures in the premises were part of the "costs of administration." A careful consideration, however, of the bankruptcy act, especially sections 62, 64, 30 Stat. 562, 563 [U. S. Comp. St. 1901, pp. 3446, 3447], has led me to a conclusion at variance with that of the learned referee upon this phase of the case. It does not at all seem to me that expenditures made at the instance either of the general creditors or of the trustee in their behalf to do what was done for their sole benefit in this instance are such "costs of administration" as were in the contemplation of Congress when it used that phrase in the act. Such expenditures occur in a special and abnormal case, which could hardly have been within such contemplation. The phrase has a much more restricted signification. See sections 40, 48, 51, 52 (30 Stat. 556, 557, 558, 559 [U. S. Comp. St. 1901, pp. 3436, 3439, 3440, 3441]). I go further, and doubt whether the expenses of continuing the business of the bankrupt for a limited period, under section 2, cl. 5, would take priority over valid liens already existing and fixed, such as were Ronald's and Root's. Section 67, cl. 3. In my judgment valid liens, properly acquired and fixed, could not be displaced by the trustee or the general creditors in any such subsequent proceeding

for the sole benefit of the latter. The liens, both of Ronald and of Root, being clearly fixed by previous events, and being well known to the trustee, it was the duty of the latter to remember them, and in expending the assets of the bankrupt to stop when those assets were exhausted up to the point where it took all of the remainder to satisfy those liens. The failure of the trustee to do this, and his expenditure of those parts of the assets which he knew were claimed to be fairly subject to the other liens, in my judgment reduced his equity far below those of Ronald and Root, and he must consequently suffer for his improvidence. The liens of Ronald and Root were prior in time certainly, and I think also prior in right. Without the improvidence referred to the trustee's outlays would not have exceeded the money in his hands belonging to the general creditors. He would have stopped when that was exhausted. Without that improvidence he would not have absorbed the money belonging in equity to Ronald and Root, respectively, and of whose claims he was fully advised. Where one of two innocent persons must suffer, he should do it who created the necessity for either to do so.

It seems to me upon these considerations, which might be amplified, that in this somewhat distressing case the petitions for review filed by G. W. Ronald and G. R. Root should be sustained, and the judgment and orders in the premises made by the referee should be reversed.

Upon the return of the case to the referee he should be directed to cause an order of distribution to be made in a proper procedure, in which the trustee should be required to pay to G. W. Ronald the amount of his claim; and he should furthermore direct the trustee, upon the coming in of the money due from the Louisville Water Company, first to pay thereout the claim of G. R. Root's administration, and out of what remains to reimburse himself, if possible, for the amount paid to G. W. Ronald. The failure of the trustee to pay the secured debt of Ronald, and his expenditure of the money that was, under his own agreement, applicable thereto, makes this ruling necessary, though he should, for this payment, be reimbursed, if the fund is sufficient, out of the money to be paid by the Louisville Water Company, subject, however, to the previous payment out of it of the debt due Root. A judgment may be prepared accordingly, in which should be recited the fact that this case, upon the petitions for a review, was heard upon what is contained in the original certificate of the referee, the amended certificate of the referee, and the facts as stated in this opinion.