### In re YOKE VITRIFIED BRICK CO.

(District Court, D. Kansas, Third Division. June 18, 1910.)

No. 494.

1. BANKRUPTCY (§ 345*)—PRIORITIES IN DISTRIBUTION OF ESTATE—CONSTRUCTION OF ACT.

Bankr. Act July 1, 1898, § 64b, cls. 4, 5, c. 541, 30 Stat. 563 (U. S. Comp. St. 1901, pp. 3447, 3448), which respectively give priority to wages due workmen, etc., and debts owing to any person who by the laws of the states or the United States is entitled to priority, relate exclusively and alone to priority among those whose claims would, in the absence of such clauses, stand on terms of equality before the law as general unsecured claims, and have no reference whatever to the subject of liens.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

2. BANKRUPTCY (§ 348*)—PRIORITIES IN DISTRIBUTION OF ESTATE—DISPLACEMENT OF LIENS.

Claims of laborers for wages against the estate of a bankrupt, although given priority "over every other debt or claim" in cases of receivership or general assignment by the law of the state, and Bankr. Act July 1, 1898, § 64b, cls. 4, 5, and section 64, c. 541, 30 Stat. 563 (U. S. Comp. St. 1901, pp. 3447, 3448), are not entitled to priority of payment from the proceeds of property subject to valid fixed liens over the holders of such liens in view of section 67d, which provides that valid liens "shall not be affected by this act."

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 348.*]

In the matter of Yoke Vitrified Brick Company, bankrupt. On review of order of referee. Affirmed.

Charles D. Welch, for petitioner on review.

W. S. McClintock, A. L. Quant, and W. E. Rice, for respondent.

POLLOCK, District Judge. The question certified for review in this matter is the extremely difficult and doubtful one of the rights of laborers, clerks, and other employés to priority of payment out of the proceeds derived from a sale of the assets of the estate of the bankrupt now in the hands of the trustee for distribution over the rights of those having fixed liens on the property at the date of the institution of the proceedings and the subsequent adjudication. The question arises in this manner:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. This proceeding was instituted August 7, 1909. The order of adjudication was entered August 28, 1909. At this time there were fixed liens on the property procured at the dates, in the amounts, and ordered paid by the referee in the order stated, as follows, to wit:

| Name. | Date. | Filing. | Character. | Amount. |
|---|---|---|---|---|
| 1. Am. Clay Mach. Co. | | 12/18/06 .5/ 1/07 | Vendor's Lien | $ 3,577 92 |
| 2. Alanson Bennett | 8/ 1/07 | 8/ 5/07 | Trust Mtg. | 28,245 00 |
| 3. Chas. Binder, Adm'r | 8/28/09 | 3/18/09 | " | 3,478 31 |
| 4. Chas. Binder " | " | " | " | 726 82 |
| 5. Chas. Binder " | " | " | " | 215 50 |
| 6. J. W. Metz Lumber Co. | " | 7/17/09 | " | 2,505 52 |
| 7. Chas. Binder, Adm'r | " | 3/18/09 | " | 95 11 |
| 8. Chas. Binder " | 8/28/09 | " | Mech. Lien | 3,124 52 |
| 9. Chas. Binder " | " | " | " | 43 54 |
| 10. Chas. Binder " | " | " | " | 139 78 |
| 11. Chas. Binder " | | " | " | 258 02 |
| 12. Ruthrauff Bros. | " | 8/28/09 | " | 209 47 |
| 13. Chas. Binder, Adm'r | 8/28/09 | 9/ 7/09 | " | 472 44 |
| 14. Chas. Binder " | " | 7/ 7/09 | " | 1,323 54 |
| 15. N. W. Murphy " | " | 8/26/09 | " | 78 11 |
| 16. Coffeyville F. & M. Co. | " | 9/ 1/09 | " | 122 09 |
| 17. Mehl Bros. | " | 8/16/09 | " | 150 47 |
| 18. T. H. Rogers Lumber Co. | " | 7/21/09 | " | 101 66 |
| 19. Medart Patent Pulley Co. | " | 10/ 7/09 | " | 361 06 |

To this order of the referee marshaling the fixed liens on the property and directing payment to be made by the trustee there is no objection made by any lienor. However, at the date of the institution of this proceeding, the bankrupt company was indebted to laborers, clerks, and servants for wages earned by them within three months next preceding the date of the institution of the proceeding, and to no one more than $300, in the aggregate the sum of $6,680.78, all of which said wage claims had been before the institution of the proceeding assigned to one Robert Binder, now deceased, and here represented by his administrator, Chas. Binder, and said Robert Binder before the institution of this proceeding had assigned to the Condon National Bank, as collateral security to his note for $5,000, $3,232.69 of said labor claims. All the property of the bankrupt has been sold under order of court, freed from liens, and the bank and Chas. Binder, as administrator, have filed their intervening petition before the referee praying an order directing the trustee in making distribution of the proceeds of the estate to pay the amount of their said claims for wages in preference to the claims of Bennett under his first mortgage, and in preference to the holders of the mechanics' liens on the property. This claim of petitioners was by the referee denied, and the correctness of this ruling has been certified here for review.

The right of the assignees of the claims of the wage-earners to priority of payment is based upon section 64b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which provides as follows:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition;

(2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow; (4) wages due to workmen, clerks, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed $300 to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

And on section 1, c. 229, Laws Kan. 1901, which provides:

"That whenever a receiver shall be appointed of the estate of any corporation, copartnership or individual, under the laws of this state, or whenever any corporation, copartnership or individual shall make a general assignment for the benefit of the creditors of such corporation, copartnership or individual, the wages due to all laborers or employés other than officers of such corporation, accruing within six months immediately preceding such appointment of a receiver or such assignment, shall be preferred to every other debt or claim against such corporation, copartnership or individual, and shall be paid by the receiver or assignee of such corporation, copartnership or individual, from the money thereof which shall first come into the hands of such receiver or assignee."

The rights of the lienors are based on the provisions of section 67d of the bankruptcy act, which provides:

"(d) Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."

The question is: Does the phrase "debts which are entitled to priority of payment," as employed in section 64b, refer to simple contract debts unsecured, or does it apply to and include all debts, those secured by fixed liens as well as those unsecured by lien?

In so far as the statute law of this state quoted is concerned, it has not received consideration by the Supreme Court of this state; hence whether that act shall be construed to give the wage-earner priority of payment over fixed liens on the property in the hands of the receiver or assignee remains to be determined. However, as it obviously must be classed among the insolvency laws of the state, its operation remains suspended as to any matter over which a court of bankruptcy has jurisdiction except in so far as the bankruptcy act preserves and enforces such act. It is therefore clear, in so far as the right of unsecured contract creditors is concerned, clause 4 of section 64b of the bankruptcy act gives a preferential right of payment to those having claims for wages due to workmen, clerks, traveling salesmen, and servants, and that this preferential right of payment must by the very terms of the act be made before any payments can be made on claims falling in the subsequent classification, and that this preferential right of payment attaches to the claim itself and is not personal to the holder. Shropshire, Woodliff & Co. v. Bush, 204 U. S. 186, 27 Sup. Ct. 178, 51 L. Ed. 436.

The right of wage-earners and employés except officers of a corporation to priority of payment created by the statute of the state above

quoted is preserved and enforced by clause 5 of section 64b of the bankruptcy act. Hence it is clear after payment of the priorities provided for in clause 4 of section 64b of the act, in so far as simple contract creditors are concerned, those priorities provided for in clause 5 must be paid before distribution of any portion of the estate to general unsecured creditors may be made.

The question presented for decision is this: Are petitioners entitled to be paid out of the money now in the hands of the trustee in bankruptcy awaiting distribution which arose from a sale of the property under the order of court, freed from liens thereon, in preference to the demands of those having fixed and valid liens on the property at the date of the adjudication?

In so far as the statute of the state above quoted is concerned, it may be said: Conceding for the purpose of argument, as contended by petitioners, the broad and comprehensive language of the statute should be held to grant to the laborers and employés therein enumerated a prior right of payment to those having fixed liens on the property of an insolvent in the hands of a receiver or assignee for the benefit of creditors, if that question were presented in other than a bankruptcy proceeding, and further conceding this proceeding in bankruptcy is the legal equivalent for the receivership or assignment for the benefit of creditors employed in the statutes, as I think must be done (see In re Laird, 109 Fed. 550, 48 C. C. A. 538), yet the question remains: Does it follow therefrom petitioners are entitled to be paid out of the fund now in the hands of the trustee in this case, in preference to the rights of the mortgagee and mechanic's lien claimants here opposing such payment?

I think not, and for the following reasons: The liens here asserted are admittedly valid and within the protection afforded by section 67d of the bankruptcy act. Therefore the mandate of the act is: Such liens shall not be affected by the provisions of the act; that is to say, neither the priority nor the validity nor any other subsisting right in the property acquired and held by virtue of such liens shall be affected by any provision of the act. The statute of the state on which petitioners rely, above quoted, is an insolvency law of this state. While its repeal was not affected by the passage of the bankruptcy act, yet its operation was suspended during the period the bankruptcy act shall remain in force. Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. 84, 36 L. Ed. 981. And were it not for the fact that clause 5 of section 64b of the bankruptcy act preserves such statute in effect as a law of the state touching the subject of priorities, it would remain entirely inoperative and of no force in the settlement of estates of bankrupts under the provisions of the bankruptcy act.

It therefore follows, I think, as the night follows the day, it must be given effect under the provisions of clause 5 of section 64b of the bankruptcy act, as a law of the state in determining who, as claimants of an estate in bankruptcy, are entitled to the right of priority of payment; but its operation must be so circumscribed as to not affect the rights of such lienholders as are comprehended within and protected by the provisions of section 67d of the act.

When viewed in this light, it readily appears if the only prior right of payment provided for in section 64b of the bankruptcy act had been debts owing to any person who by the laws of the state are entitled to priority of payment, and the state statute should receive the construction above conceded, such provision in the act would not have affected the rights of a lienholder who received his lien after the state statute had become a law of the state. But such are not the terms of the bankruptcy act.' Instead of claimants here demanding priority of payment of their claims under the state law in question, receiving their demands, as commanded by the terms of the statute, "from the money thereof which shall first come into the hands of such receiver or assignee" (in this case, trustee), the provisions of the bankruptcy act are such that four classes of claimants must be first paid in full before one claiming priority of payment of his demand under the state law may be paid anything, and of the four classes of demands entitled to be so paid in preference to one claiming priority of payment under the state law are such demands as filing fees, and certain costs of administration not going to the preservation of the estate, and which do not protect or further the interest of the lienholder, and which for this reason, as against his rights, cannot be ordered paid out of the estate on which his lien holds against his consent. It therefore follows, of necessity, if such demands must be paid before one demanding priority of payment under the laws of the state can be paid, and as such prior demands, which by the very terms of the act itself must be first paid, cannot be enforced against the rights of a valid lienholder, to enforce the rights of petitioners in accordance with the statute of the state, as it is contended by them should be done, would operate to affect the fixed liens thereon, and thus contravene the express provision of section 67d of the bankruptcy act.

In my judgment clauses 4 and 5 of section 64b of the bankruptcy act relate exclusively and alone to the subject of the right to priority of payment arising among those whose claims would, in the absence of such clauses, stand on terms of equality before the law as general unsecured claims, and that said clauses have no reference whatever to the subject of liens. It was in contemplation of the lawmaking power that estates passing, as of the date of the adjudication, to the trustees in bankruptcy, would be covered and affected by fixed and valid liens resting thereon. Hence, for the protection of those holding such valid liens, and lest the rights of such lienholders should become confounded with the rights of those holding general unsecured demands against the estate which had been accorded priority in payment by the provisions of section 64b of the act, it was provided in section 67d of the act, in effect, that nothing appearing elsewhere in the act itself, no matter how general and comprehensive the language employed might be, should affect the validity, extent, or operation of such liens. However, anything inhering in the general principles of equity or the law, such, for example, as the duty of the property to contribute its just proportion of the expense of government, or to pay its pro rata share of the expenses incurred in the preservation of the estate, and such like matters, remain still enforceable

against the estate, although covered by fixed liens and against the consent of the holder of such liens, for such expenses are incurred for the protection of the lienholder and are enforceable for that reason and not because embodied in the act. This is the conclusion reached in Re Cramond (D. C.) 145 Fed. 966, and, notwithstanding decisions apparently to the contrary, I am convinced is the true construction of the act.

The decision of the referee is therefore approved and confirmed.