In re RAUCH. In re HYMAN. In re ARONHEIM & CO., Inc.

(District Court, E. D. Virginia. October 15, 1915.)

1. BANKRUPTCY ⬥474—LIENS—PAYMENT OF COSTS—"ESTATE"—"BANKRUPT'S ESTATE."

Bankr. Act July 1, 1898, c. 541, § 62, 30 Stat. 562 (Comp. St. 1913, § 9646), provides that the actual and necessary expenses incurred by officers in the administration of estates shall be reported, and, if approved, paid out of the estates in which they are incurred. Section 64b (Comp. St. 1913, § 9648) specifies the debts to have priority and to be paid in full out of bankrupt estates, and the order of payment, and, after specifying the actual and necessary cost of preserving the estate, the filing fees paid by creditors in involuntary cases, the cost of administration, etc., specifies, as the fifth class, debts owing to any person who by the laws of the state or the United States is entitled to priority. *Held*, that this section does not give the general costs in bankruptcy precedence over the claim of a landlord having a lien on specific property under the law of the state, and only such costs as are necessarily incidental to the preservation of such property, its conversion into money, and the payment thereof to the landlord, can be paid from such property in preference to the landlord's claim, as the words "estates," and "bankrupt's estates," in sections 62 and 64b, respectively, mean the unincumbered assets generally of a bankrupt, properly administrable in bankruptcy, as distinguished from property of the bankrupt dedicated by law to the payment of a particular obligation, or upon which there is a specific lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ⬥474.

For other definitions, see Words and Phrases, First and Second Series, Estate.]

2. BANKRUPTCY ⬥474—LIENS—PAYMENT OF COSTS.

Before paying the claim of a creditor having a lien on specific property of a bankrupt, there should be paid reasonable compensation to receivers, if appointed, and a like sum in the discretion of the court on the fund turned over to the trustee by the receiver, the referee's commissions on the amount of the lien, and the cost of the first meeting of creditors, together with the cost incident to the sale and payment of the pro-

ceeds to the lienor and of the proposed allowances; but costs paid to initiate involuntary proceedings, attorney's fees to the petitioning creditors, the bankrupt, whether in voluntary or involuntary cases, or the receiver or trustee, and the general costs of the referee, such as for giving notices generally, holding creditors' meetings, and receiving proofs of claims, should not be so paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878-884; Dec. Dig. ☞474.]

In the matters of David Rauch, A. L. Hyman, and Aronheim & Co., Incorporated, bankrupts. On reports of the referee. Matters remitted to the referee for reformation.

Agelasto & Miller, of Norfolk, Va., for petitioning Rauch creditors.
Meyer Koteen, of Norfolk, Va., for petitioning Hyman creditors.
Baird & Swink, of Norfolk, Va., for petitioning Aronheim & Co. creditors.
Levy & Mitchell, of Norfolk, Va., for bankrupts.

WADDILL, District Judge. These three cases are now before the court upon schemes of distribution, reported by Referee R. T. Thorp, and, while they are in no way related one to the other, they each present for consideration the same question; that is, to what extent the property of the several bankrupts in the hands of their several trustees, and subject to a specific lien for rent thereon, shall be charged with the costs of administering the bankrupt's estate, or, in other words, what items of cost of administration may be paid out of funds charged with such liens.

[1] Section 62 of the Bankruptcy Act of 1898 (Collier [10th Ed.] 836) provides generally for the payment of costs in connection with the administration of bankrupt's estates; section 64 (page 882) also prescribes generally what costs shall be paid and the order of priority; and paragraphs 1, 2, and 3 of subsection "b" of section 64, enumerate the order in which costs must be paid. Paragraph 4 of the same subsection provides for the payment of wages due to workmen, clerks, traveling or city salesmen, and servants, earned within three months of the commencement of the proceedings, not to exceed $300; and paragraph 5 of the same subsection enumerates as the next order of priority:

"Debts owing to any person who by the laws of the states or the United States is entitled to priority."

It is insisted that the general costs of the administration of a bankrupt's estate should first be paid, in preference to those entitled to priority of payment by the laws of either the state or the United States, and hence that in such cases the entire cost of administering, including attorney's fees, referee's general costs, and costs and expenses of receivers and trustees, should be paid in preference to rent due by a bankrupt; in other words, that a claim for rent is only a debt, to which priority is given by the laws of this state.

The court's conclusion is that this view is fallacious; and, without meaning to say how far general costs in bankruptcy take precedence

over the rights of lienors, such, for instance, as holders of judgments and decrees, covering the estate of the bankrupt generally, and which is being subjected to the payment of such liens, that as against one holding a lien for rent upon specific property of the bankrupt, given by the law of the state, such costs cannot be paid, and are not entitled to preference over the rent lien; that this fund, arising from the sale of property upon which there is a specific lien, is analogous to that of a fund arising from the sale of real or personal property covered by deed of trust, and from which can only be deducted, not the general costs of administration of the bankrupt's estate, but such as is necessarily incident to the preservation of the particular estate, and its conversion into money, and payment thereof to the lienor entitled thereto. By the words "of estates," in section 62, supra, and "bankrupt's estates," in section 64, subsec. "b," supra, is. meant the unincumbered assets generally of a bankrupt, properly administrable in bankruptcy, as distinguished from that of the property of a bankrupt dedicated by law to the payment of a particular obligation, or upon which there is a specific lien. The last-named section is intended particularly to give the order to be observed by trustees in the payment of such unincumbered estate. Collier (10th Ed.) p. 885, and note; In re Hambright, Fed. Cas. No. 5,973; In re McConnell, Fed. Cas. No. 8,712.

[2] In cases like the ones under consideration, reasonable compensation, not, however, in excess of the allowances made by the statute, should be allowed to receivers, if appointed, and a like sum, in the discretion of the court, on the fund turned over to the trustee by the receiver, also the referee's commissions under the law, on the amount of the lien paid to the landlord, the cost of the first meeting of creditors, together with the cost incident to the sale and payment of the proceeds to the lienor, and of the proposed allowances, of which the lienor should have notice. Such costs as the amount paid to initiate involuntary proceedings, payment of attorney's fees to petitioning creditors, fee of attorney for the bankrupt, whether in voluntary or involuntary cases, or counsel for the receiver or trustee, the general costs of the referee, such as for giving notices generally, holding creditors' meetings, receiving proofs of claims, clearly, in the opinion of the court, should not be paid out of the proceeds of sale of property upon which there is a lien for rent, in preference to the rent, nor until such rent is paid. As to attorney's fees, petitioning creditors should not, in the absence of assets properly subject to the payment of their debts, be permitted to have such allowances in their favor, against persons who have liens upon property not subject to their debts; and the bankrupt should not, as against his landlord, be allowed to employ attorneys at the latter's expense, nor likewise should either his receivers or trustees. Authorities to support these conclusions might be cited almost without number; indeed, no more salutary rule can be invoked and enforced in the administration of the Bankruptcy Law than that vested rights shall be disturbed as little as possible, and that costs and expenses in the administration of the system shall be kept at a minimum, and assessed only against those chargeable therewith. The failure to strictly adhere to these obvious principles

caused much of the abuse under the act of 1867, and contributed largely to its repeal. In re Bourlier Cornice & Roofing Co. (D. C.) 133 Fed. 958; In re Crammond (D. C.) 145 Fed. 966; In re Yoke Vitrified Brick Co. (D. C.) 180 Fed. 235; In re Frick, 1 Am. Bankr. Rep. 719; In re Meis, 18 Am. Bankr. Rep. 104; Gardner v. Cook, Fed. Cas. No. 5,226; In re McConnell, Fed. Cas. No. 8,712, supra; In re Hambright, Fed. Cas. No. 5,973, supra; Collier on Bankruptcy (10th Ed.) 837, and cases cited, and page 885, and cases cited. Nothing can be more pernicious than the inauguration of a system whereby bankrupts may secure the benefit of the law at the expense of their lien creditors.

The suggestion is made that the landlord's lien should not relatively occupy the status of a lien by trust deed, for the reason that as to the former, legal proceedings have to be inaugurated to enforce it, and hence that the same should occupy no other or different position from that of the lien of a judgment. This view, is not, in the opinion of the court, sound. The lien of a judgment covers the estate of a bankrupt generally, and not specific property, as that of the lien of the landlord, which attaches without the institution of any legal proceeding, and from the moment property of the bankrupt is placed upon the landlord's premises. Moreover, while such lien may be enforced by distress or levy, still the issuance of such process is not necessary where the estate of the debtor is being administered in bankruptcy. The court takes judicial notice of the lien given by the state statute. This has been the uniform practice in this district since the decision of Chief Justice Chase, under the Bankruptcy Act March 2, 1867, c. 176, 14 Stat. 517, in Re Wynne, Fed. Cas. No. 18,117, a leading case on the subject of landlord's rights.

The several schemes of distribution hereinbefore referred to will be remitted to the referee, to reform the statements of costs in accordance with these views.