Norman MALAKOFF, et ux., Appellants,

v.

Walter E. WASHINGTON, et al., Appellees.

No. 79–739.

District of Columbia Court of Appeals.

Argued Sept. 30, 1980.

Decided Aug. 6, 1981.

B. William Smink and M. Michael Klein, Washington, D.C., for appellants.

Richard G. Amato, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, Washington D.C., at the time the brief was filed, James E. Lemert, Deputy Corp. Counsel and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before MACK and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.[*]

---

[*] Judge Gallagher was an Associate Judge of the court at the time the case was argued. His status changed to Associate Judge, Retired on February 27, 1981.

GALLAGHER, Associate Judge, Retired:

The single issue presented by this appeal is whether the District of Columbia's claims for unpaid sales and withholding taxes take priority over a prior perfected security interest in property distrained and sold at a tax sale. The trial court found that the District had a superior claim with respect to both the sales and withholding taxes notwithstanding the valid pre-existing security interest, and entered summary judgment for appellees. Because we hold that the District of Columbia Code fails to accord absolute priority to the District's claim for delinquent withholding taxes, we reverse in part and remand.

The facts of this case are not in dispute. On August 18, 1971, appellants, Norman and Marjorie Malakoff, sold their hardware store business (located at 3430 14th Street, N.W.) to a newly-formed District of Columbia corporation, Mals Hardware, Inc. (Mals).[1] Mals executed a promissory note in the amount of $30,000 and gave the Malakoffs a security interest in all of the fixtures, equipment, and inventory of the store, including replacements and substitutions. A financing statement was duly recorded with the Office of the Recorder of Deeds on September 22, 1971. On January 15, 1975, the Chief Enforcement Officer for the District of Columbia Department of Finance and Revenue seized certain of the property covered by the security agreement for failure of Mals to pay withholding and sales taxes accruing subsequent to the recording of the financing statement. On March 17, 1975, a private auctioneer sold the property at public auction on behalf of the District for the gross sum of $5,090.00 and the net sum of $4,077.40. The District retains the net proceeds in satisfaction of its claims for taxes. At the time of the

sale, $18,656.95 was still outstanding on the promissory note held by the Malakoffs. While the items were purportedly sold "subject to any lawful liens of encumbrances," the auction house failed to obtain the full names and addresses of the purchasers of the 224 lot items.[2] For all practical purposes, then, the Malakoffs' security interest has been wholly extinguished, unless, of course, we conclude that it takes priority over one or both of the District's claims for taxes.

## THE LAW OF TAX LIEN PRIORITY GENERALLY

Generally, priority of liens or security interests is determined according to the well-known principle of "first in time, first in right." *District of Columbia v. Franklin Investment Co.*, D.C.App., 404 A.2d 536, 540 (1979); *District of Columbia v. Hechinger Properties Co.*, D.C.App., 197 A.2d 157, 160 (1964) [hereinafter cited as *Hechinger*]; *Rankin v. Scott*, 25 U.S. (12 Wheat.) 177, 179, 6 L.Ed. 592 (1827). The Uniform Commercial Code (UCC), effective in the District of Columbia on January 1, 1965, preserves this common-law principle, but refines it through the general rule that a party who first *notifies* the public of his security interest in a particular piece of property, either through possession of the collateral or filing of his financing statement (so-called "perfection"), prevails over all other parties with a security interest in the same collateral, regardless of which party first acquired the security interest itself (so-called "attachment"). Uniform Commercial Code—Secured Transactions, D.C. Code 1973, §§ 28:9–204(1), –301(1), –302, –303, –305, –312(5). In this connection, we note that the Malakoffs had perfected their

1. Despite the similarity in names, the Malakoffs had no apparent personal connection with the corporation.

2. At oral argument, counsel for appellants expressly denied that the Malakoffs make any claim that the District or its agent breached some duty of care owed the Malakoffs as purported junior lienors by not keeping adequate records of the purchasers. We therefore intimate no view on that question, nor on the issue

of whether the District had a duty to notify personally (rather than by publication) all holders of prior perfected security interests in the chattels distrained. *But cf.* Uniform Commercial Code—Secured Transactions, D.C.Code 1973, §§ 28:9–504(3), –506 (requiring that private secured party with priority notify all junior secured parties so that the latter may exercise their rights of redemption).

security interest on September 22, 1971, well before the accrual of the District's claims for taxes.

 While the UCC is by its own terms inapplicable to liens acquired by the District on account of delinquent taxes, *id.* § 28:9–102(2), the principle of "first in time, first in right" prevails as the general rule in contests between the Department of Finance and Revenue and private secured parties. *See District of Columbia v. Franklin Investment Co., supra* at 540. This rule is subject to an important exception, however. The legislature may, by statute, declare that the District's claims for taxes shall be liens preferred to all other liens or security interests of whatever kind and however created, and whether attaching or perfected before or after the tax lien arises.[3] *Krumpelman v. Louisville & Jefferson County Metropolitan Sewer District,* 314 S.W.2d 557, 561 (Ky.1958); *Linn County v. Steele,* 223 Iowa 864, 866, 273 N.W. 920, 921 (1937); *Union Central Life Insurance Co. v. Black,* 67 Utah 268, 270, 247 P. 486, 487 (1926); *Miller v. Anderson,* 1 S.D. 539, 544, 47 N.W. 957, 959 (1891); *United States v. Elliott,* 209 F.Supp. 374, 376 (D.Colo. 1962); 3 T. Cooley, Taxation § 1230, at 2451–52 (4th ed. 1924). *See District of Columbia v. Franklin Investment Co., supra* at 540. Moreover, "super-priority" may be conferred upon the government's bare claim for taxes, whether or not they are also made liens. *See Wethered v. Alban Tractor Co.,* 224 Md. 408, 417, 168 A.2d 358, 363 (1961). But this legislative intent to make claims or liens for taxes absolutely preferred must clearly appear from a strict construction of the statute. *Linn County v.*

*Steele, supra* 223 Iowa at 866, 872, 273 N.W. at 921, 924; *Miller v. Anderson, supra* 1 S.D. at 544, 47 N.W. at 959; 3 Sutherland Statutory Construction § 66.08, at 203 (4th ed. 1974); 2 L. Jones, Chattel Mortgages & Conditional Sales § 474, at 245 (6th rev. ed. 1933). *See generally* 72 Am.Jur.2d *State and Local Taxation* §§ 898–99 (1974); 84 C.J.S. *Taxation* § 599, at 1207 (1954). Although appellants do not here argue that such statutory grants of absolute priority to tax claims or liens violate some provision of the Constitution, we note that such arguments have uniformly been rejected so long as the statute in question is sufficient to place the public effectively on notice of the sovereign's claim of priority. *See, e. g., Schlothan v. Territory of Alaska,* 276 F.2d 806, 813, 814 (9th Cir.), *cert. denied,* 362 U.S. 990, 80 S.Ct. 1079, 4 L.Ed.2d 1022 (1960) (no impairment of contractual obligations or violation of due process); *Krumpelman, supra* at 561 (same). Our task, then, is to determine whether Congress (as the legislature of the District when the relevant portions of Title 47 of the District of Columbia Code were enacted) has sufficiently manifested an intent that claims for withholding and sales tax be absolutely prior to all other encumbrances.[4]

## THE LAW OF TAX LIEN PRIORITY IN THE DISTRICT OF COLUMBIA

Title 47 of the District of Columbia Code makes the methods provided therein for the collection of *personal property taxes* available for the enforcement of all other taxes except real property taxes.[5] D.C.Code 1973, § 47–312 provides:

---

**3.** This rule is to be distinguished from the common-law absolute priority of the sovereign's claim for taxes over the claims of *unsecured* creditors. *See Marshall v. New York,* 254 U.S. 380, 382–83, 41 S.Ct. 143, 144–45, 65 L.Ed. 315 (1920); *Valley National Bank of Long Island v. Levy,* 45 App.Div.2d 771, 772, 356 N.Y.S.2d 1003, 1006 (1974); *Lacaille v. Feldman,* 44 Misc.2d 370, 380, 253 N.Y.S.2d 937, 950 (1964).

**4.** It is worth noting that Congress has made liens for delinquent *federal* taxes junior to certain prior perfected security interests. *See* 26 U.S.C. § 6323 (1976 & Supp. III 1979).

**5.** Historically, claims for real estate taxes have enjoyed a special preeminence over all other claims or encumbrances on the property taxed. As the Supreme Court stated in *Osterberg v. Union Trust Co.,* 93 U.S. 424, 428, 23 L.Ed. 964 (1876), a real estate tax is not considered a mere personal claim against the owner, but a charge or lien against the land, and "does not stand upon the footing of an ordinary encumbrance . . .; [i]t attaches to the *res* without regard to individual ownership." *Accord, District of Columbia Redevelopment Land Agency v. Eleven Parcels of Land,* 191 U.S.App.D.C. 105, 106, 589 F.2d 628, 629 (1978); *Tumulty v.*

In addition to any other methods or devices or both provided by law or regulation for the collection of various taxes (except real property taxes) due the District, any tax imposed by any law applicable to District taxes, and penalties and interest thereon, when such tax has become due and payable, may be collected in the manner provided by law for the collection of taxes due the District on personal property in force at the time of such collection; and liens for all such taxes, penalties, and interest may be acquired in the same manner that liens for personal property taxes are acquired.

One method by which delinquent personal property taxes may be collected is by distraint and sale. D.C.Code 1973, § 47–1301 provides that the collector of taxes may seize "sufficient goods and chattels" (or, for want of such personalty, the real property) of the delinquent taxpayer and, after notice by publication (or, if realty is distrained, after personal notice by letter), sell the property at public auction, with any surplus proceeds going to the taxpayer. *See also* *id.* –1402. It is important to note that the District's lien for personal property taxes does not merely arise from the fact of a delinquency. The lien must be "acquired" (*see id.* –312, *supra*), either by the filing of a certificate of delinquency with the recorder of deeds (*id.* –1406) or by the more immediate means of distraint (*id.* –1301, –1402).[6] Moreover, a lien so acquired is entitled only to the priority given by the principle of "first in time, first in right," for the Code contains no provision making liens for personal property taxes superior to pre-existing perfected security interests. *See* discussion *supra*.

Having laid this foundation, we proceed to examine the taxes at issue—sales tax and withholding tax.

*a. Sales Tax*

Like personal property taxes, sales taxes are not an automatic lien on the taxpayer's property from the time they are due and owing. Section 47–2610 of the Code reiterates the prescription of § 47–312 (quoted *supra*) that sales taxes "may be collected . . . in the manner provided by law for the collection of taxes due the District on personal property" and that "liens for [sales] taxes . . . may be acquired in the same manner that liens for personal property taxes are acquired." D.C.Code 1973, § 47–2610. Thus, the District acquires no lien for unpaid sales taxes unless and until it files a certificate of delinquency or (as it did here) distrains the property of the taxpayer. But while the Code does not purport to give personal property tax liens priority over preexisting encumbrances, § 2609 does give special preference to sales taxes, whether or not the District has taken steps to acquire a lien therefor. It reads:

§ 47–2609. Tax a preferred claim—Priority over property taxes.

Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim. Neither the United States marshal, nor a receiver, assignee, or any other officer shall sell the property of any person sub-

---

*District of Columbia*, 69 App.D.C. 390, 395, 102 F.2d 254, 259 (1939). In *Tumulty*, the court explained that the *sui generis* character of claims for realty taxes is due, at least partially, to the nature of real property itself:

Real property is permanent and lasting. The owner of real estate may be readily located by a search of the land records, but if not easily located, it is of little moment, for the property itself stands charged with the tax and may be levied upon. An unencumbered

deed cannot be given, nor obtained, until the tax is paid. [*Id.* at 395, 102 F.2d at 259.] *See* D.C.Code 1973, § 47–1003.

6. Thus, the District's methods for acquiring a personal property tax lien are analogous to the methods for perfecting private security interests—filing and possession. *See* Uniform Commercial Code-Secured Transactions, D.C. Code 1973, § 28:9–302, –303(1), –305 and discussion *supra*.

ject to tax under the terms of this chapter under process or order of any court without first determining from the Collector the amount of any such taxes due and payable by said person, and if there be any such taxes due, owing, or unpaid under this chapter, it shall be the duty of such officer to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature. Any person charged with the administration or distribution of any such property as aforesaid who shall violate the provisions of this section shall be personally liable for any taxes accrued and unpaid which are chargeable against the person otherwise liable for tax under the terms of this section.

 We held in *Hechinger, supra* that this section was applicable to enforcement of a judgment *in rem* by judicial sale notwithstanding the failure of the first sentence of § 2609 to mention such a proceeding. *Id.* at 161. Specifically, we held that the second sentence of § 2609 operates independently of and more broadly than the first, and "subject[s] any property of the delinquent taxower, no matter how it gets into the hands of the marshal ['or any other officer'], to a claim by the District for taxes owed." *Id.* We hold that the distraint and sale of Mals' property by the Chief Enforcement Officer of the District Department of Finance and Revenue comes within the ambit of the second sentence of § 2609 so understood. Moreover, we hold that this sentence's mandate that "such officer . . . *first* pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or *other claimants of whatsoever kind or nature*" (emphasis added) unambiguously gives the District's claim for sales taxes "a first priority in terms absolute." *See United States v. Saidman,* 97 U.S.App.D.C. 344, 350, 231 F.2d 503, 509 (1956). The trial court was correct in ruling that the District's claim for sales taxes took precedence over the Malakoffs' prior perfected security interest.

b. *Withholding Tax*

 The D.C.Code gives the District an automatic lien as a means of enforcing the personal liability of an employer for income taxes required to be withheld from the wages of its employees and held in trust for the District:

The District of Columbia shall have a lien upon all the property of any employer who fails to withhold or pay over to the Collector sums required to be withheld under this section. If the employer withholds but fails to pay over the amounts withheld to the Collector the lien shall accrue on the date the amounts were withheld. If the employer fails to withhold, the lien shall accrue on the date the amounts were required to be withheld. [D.C.Code 1973 § 47–1586g(f)(2).]

*See also id.* –1586g(f)(1), (h). We held in *Hechinger, supra,* that the lien arising by force of this provision is fully and instantly perfected. *Id.* at 160. In particular, the District need not file a certificate of delinquent withholding taxes in order to establish its claim for satisfaction out of the employer's property. *Id. See* D.C.Code 1973, § 47–1406. But the fact that the District has an automatic lien for delinquent withholding taxes implies nothing about whether that lien is entitled to any priority other than that given by the principle of "first in time, first in right."

The District argues that D.C.Code 1973, § 47–1586h gives its lien for withholding taxes priority over even pre-existing perfected security interests. Section 1586h reads:

§ 47–1586h. Tax a personal debt.

Every tax imposed by this subchapter, and all increases, interest, and penalties thereof, shall become, from the time it is due and payable, a personal debt, from the person or persons liable to pay the same to the District and *shall be entitled to the same priority as other District taxes,* and the taxes levied under this subchapter and the interest and penalties thereon shall be collected by the Collector

in the manner provided by law for the collection of taxes due the District on personal property in force at the time of such collection. [Emphasis added].

Because the italicized phrase is ambiguous, we would normally resort to the legislative history as an aid in construing it. *See Davis v. United States,* D.C.App., 397 A.2d 951, 956 (1979). However, since there is no mention of this provision in the relevant legislative history, we are forced to rely largely upon the words of the statute itself in divining its intent.[7]

At the outset, we note that § 1586h does not mention the word "lien" at all and would seem, on its face, merely to be addressing the issue of the priority of bare *claims* for taxes, rather than the priority of tax *liens.* It states quite plainly, moreover, that "[e]very tax imposed by this subchapter" (*i. e.,* franchise and income taxes generally) shall be entitled to "the *same priority* as other District taxes" (emphasis added), a phrase obviously contemplating a uniform level of superiority. To the extent, then, that § 1586h admits of a "plain meaning," it would seem, in relevant part, to be a mere codification of the common-law rule that the government's unsecured claims for taxes are uniformly entitled to satisfaction

before the claims of a taxpayer's unsecured creditors. *See* note 3 *supra.* While such a codification of common law is not to be presumed, we think it plausible that Congress, in passing § 1586h, wished to make clear that the new tax it was proposing—an income tax—was intended to be governed by the common-law principle.[8] Accordingly, we read § 1586h to provide only that *unsecured* claims for income, franchise and (perhaps) withholding taxes[9] take priority over the *unsecured* claims of private creditors.

To accept the District's argument that § 1586h says more—that it gives the District's *liens* for income, franchise and (in particular) withholding taxes priority over competing private liens—would require us to subject the statutory language to a forced reading. Not only does § 1586h not mention the word "lien," it states, quite to the contrary, that "[e]very tax imposed by this subchapter . . . shall become from the time it is due and payable, a *personal debt* . . . ." (Emphasis added.) Since, as discussed *supra,* § 1586g(f)(2) provides that withholding taxes are, from the time required to be withheld, a lien—a charge against the employer's property rather than a mere personal debt—we would have to

---

7. We note, however, that D.C.Code 1973, § 47–1586h and its predecessor, § 47–1527, are nearly identical in wording to Md.Ann.Code 1957, § 81–317, and that it is fairly inferable that the later District provisions were modeled after the Maryland Code provision. However, the Maryland Court of Appeals has never had occasion to construe Md.Ann.Code 1957, § 81–317, and we are thus left without the benefit of that court's view of the troublesome phrase in question. *See* 2A Sutherland, *supra,* § 52.02. Although the greater comprehensiveness of the Maryland Code provisions on revenue and taxation provides intrinsic aids to the construction of the language in question absent from the District of Columbia Code (*see e. g.,* Md.Ann. Code 1957, §§ 81–202, –322(3)), we decline to construe in the first instance a provision of foreign law not directly at issue in the case before us.

8. With respect to sales tax, on the other hand, Congress clearly enlarged the common-law principle by expressly making sales tax a preferred claim on the proceeds of any judicial sale, whether or not the District had taken steps to acquire a lien therefor.

9. We note, however, that because the District has an automatic lien for withholding taxes, D.C.Code 1973, § 47–1586g(f)(2), there can logically never be a time when a claim for withholding taxes is unsecured. It is thus hard to see how withholding taxes could be the subject of § 1586h at all, unless we suppose that Congress intended to state the obvious—that a lien prevails over all unsecured claims. We note also that § 1586h, by its terms, applies to "[e]very tax *imposed* by this subchapter" (emphasis added), that is, subchapter II of chapter 15 of title 47, which is headed "Income and Franchise Taxes." We think it strains language to regard withholding tax as a distinct tax "imposed" on the employer by virtue of § 1586g(b)'s requirement that employers deduct income tax from their employees' wages and pay the same over to the District. *Cf. Menick v. Hoffman,* 205 F.2d 365, 368 (9th Cir. 1953) (withholding tax is nothing but a personal income tax assessed against the employee and collected by the employer). Accordingly, we think it plausible that § 1586h does not apply to withholding taxes in any respect. *See also* note 10 *infra.*

ignore a significant part of § 1586h in order to accept the District's argument.[10] More importantly, however, that argument would necessarily require us to read the operative phrase of the statute—"the same priority as other District taxes"—as "the same priority as other District tax liens." This construction would avail the District nothing, however. As has been shown *supra*, the District Code simply does not accord all *liens* for District taxes priority over private liens. Thus, to read § 1586h as giving withholding tax liens "the *same priority* as other District tax liens" would, at best, beg the question. It goes without saying that § 1586h could not then furnish the clear and direct grant of "super-priority" which the law requires for the District's lien for withholding taxes to prevail.

Perhaps recognizing this, the District advances as its chief argument that "[s]ince the only tax claims specifically afforded a statutory priority as a 'prior and preferred claim' are sales tax claims pursuant to § 47–2609, it necessarily follows that § 47–1586h mandates that withholding tax claims shall have the same statutory priority as is accorded to sales tax claims." We disagree for the following reasons, in addition to those just stated.

First, as the District notes, we did say in *Hechinger, supra*, that "[the] purpose [of § 1586g(f)(2) (quoted *supra*)] was clear—to give the District a lien which . . . has priority over other claims." *Id.* at 160. We did not mean by this, however, that a withholding tax lien is superior to even pre-existing perfected liens, but only that the withholding tax lien is itself *perfected* as soon as it arises and is therefore superior to all liens *subsequently* perfected. This interpretation is strongly supported by the fact that in *Hechinger*, we cited the rule of "first in time, first in right" and based our judgment for the District entirely on the fact that the liability for withholding tax ac-

crued before execution on the private judgment lien. *See id.* It is to be supposed that if § 1586h applies to withholding tax liens and gives the District absolute priority, we would at least have raised the point; but that section is not even cited in the opinion.

We are further persuaded that § 1586h does not give withholding tax claims the same "super-priority" as sales tax claims for the simple reason that the language at issue ("the same priority as other District taxes") antedates the sales tax statute. Section 1586h was enacted in 1947, two years before the passage of § 2609. And § 1586h itself replaced D.C.Code 1973, § 47–1527, an identically-worded provision passed in 1939, a full ten years before the advent of the District sales tax. Under these circumstances, we think it apparent that the language here at issue ("the same priority as other District taxes") cannot reasonably refer to the priority given sales taxes.

We do not view our conclusion that the District's lien for withholding taxes is junior to appellants' prior perfected security interest as in any way inconsistent with "the policy of the law to insure the collection of all taxes. . . . [by] constru[ing] the statutes, whenever it is possible, to achieve that result." *Hechinger, supra* at 161. The words of the statute simply do not support the interpretation argued for by the District. Another cherished policy of the law—our fundamental notion of due process—leads us to conclude that if the District desires "super-priority" for its claims for *withholding taxes, it ought to say so* through clear and explicit legislation.

CONCLUSION

■ In light of the foregoing, we hold that the District's claim for delinquent sales taxes is entitled to full satisfaction out of the net proceeds of the tax sale, but that

---

**10.** Moreover, we note that the clear implication of the final clause of § 1586h—"the taxes levied . . . shall be collected by the Collector in the manner provided by law for the collection of taxes due the District on personal property"—is that a lien for the taxes of which § 1586h

speaks must be *acquired* by the filing of a delinquency certificate or by distraint. *See also* D.C.Code 1973, § 47–312 (quoted *supra*). As we have seen, a lien for withholding taxes need not be acquired in either of these ways: it is automatic. *Id.* –1586g(f)(2).

appellants' perfected security interest is superior to the District's subsequent lien for withholding taxes. Because the record does not reveal the total amount of taxes owed, much less the amounts attributable to each item of tax,[11] we remand so the trial court may determine these amounts and distribute to appellants any proceeds in excess of the District's claim for sales taxes.[12]

*Reversed in part and remanded.*

11. At oral argument, counsel for appellant stated that the amount of arrearage was "never determined" because the distraint was pursuant to D.C.Code 1973, § 47–1586e, which provides for an immediate "jeopardy assessment" when the Department of Finance and Revenue believes that collection of the tax will be jeopardized by delay. We assume that the District will be able to furnish the court on remand with adequate documentation of its claims.

12. Because we uphold the validity of the District's distraint and sale of Mals' property, appellants' claim that they should have been permitted to interlineate their complaint to increase the *ad damnum* from $4,077.40 (the amount of the net proceeds) to $5,090.00 (the amount of the gross proceeds) is without merit. *See* D.C.Code 1973, § 47–1301.