In re SARDIS, INC. t/a Sardis 5, Debtor.

Paul D. PEARLSTEIN, Trustee in Bankruptcy, Plaintiff,

v.

U. S. SMALL BUSINESS ADMINISTRATION and District of Columbia Government, Defendants.

Bankruptcy No. 80–00574.
Adv. No. 81–0180.

United States Bankruptcy Court, District of Columbia.

Feb. 11, 1982.

Paul D. Pearlstein, Washington, D. C., trustee, pro se.

Frank J. McDougald, Jr., Asst. Corp. Counsel, Washington, D. C., for defendant District of Columbia Govt.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D. C., for defendant Small Business Admin.

## MEMORANDUM OPINION

ROGER M. WHELAN, Bankruptcy Judge.

(Complaint to Distribute Money by Trustee in Bankruptcy Pursuant to Section 724(b) of Bankruptcy Code)

The sole issue for resolution in this adversary proceeding is whether the perfected security interest of the Small Business Administration ("SBA") takes priority over the claim of the District of Columbia Government ("D.C.") for unpaid sales taxes in the amount of $80,525.05.[1]

The claim of SBA (in the amount of $629,493.37) and the assets which are subject to both asserted interests have been sold by the trustee in bankruptcy for the sum of $70,000.[2] Since the trustee in bankruptcy did not seek to avoid the lien status of either creditor in this bankruptcy case, the question of priority between SBA and D.C. is vital in determining the distribution of proceeds pursuant to Section 724(b) of the Bankruptcy Code (11 U.S.C. § 724(b).[3]

---

1. *See* Proof of Claim # 37. This opinion will only deal with the sales tax issue and not that of the employee withholding and corporate franchise taxes as that was the only issue raised in the complaint.

2. *See* Court Order of September 4, 1981 in Adversary Proceeding No. 81-0134.

3. With respect to property of the estate that is subject to liens which are not avoidable by the trustee in bankruptcy, § 724(b) of the Bank-

ruptcy Code provides that the available proceeds "shall be distributed—

"(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

Under the distributive scheme of § 724 of the Bankruptcy Code, the proceeds of sale must be distributed to the Small Business Administration if their consensual lien is superior to the D.C. tax lien. However, if the D.C. tax lien is superior, the proceeds of sale would be subject to the claims of priority creditors under 11 U.S.C. § 507(a)(1)–(5) up to the amount of the tax lien. Any surplus remaining would then be properly distributed to the District of Columbia Government for its tax lien. Should any proceeds still remain, after satisfaction of the D.C. tax lien, the balance would then vest in the SBA.

Accordingly, the Court must determine outside of the Bankruptcy Code the priority of the conflicting liens pursuant to District of Columbia law. The Court is of the opinion that the recent D.C. Court of Appeals decision in *Malakoff v. Washington,* 434 A.2d 432 (1981), is dispositive of the priority issue present in this proceeding. In *Malakoff* a security interest in all the fixtures, equipment and inventory of a store was perfected by the filing of a financing statement with the Recorder of Deeds on September 22, 1971. On January 15, 1975, the District of Columbia Department of Finance and Revenue seized property covered by the security agreement for failure of the business to pay withholding and sales taxes that arose subsequent to the recording of the financing statement. The property was sold at a public auction subject to any lawful liens or encumbrances. The issue then arose as to the priority of the security interests. In its holding on that issue, the Court stated that "[g]enerally, priority of liens or security interests is determined according to the well-known principle of 'first in time, first in right.'" Id. at 435. It noted that the Uniform Commercial Code (UCC) refines this principle by providing that a party who first notifies the public of his security interest in a particular piece of property prevails over all other parties. However, as

provided in the 28 D.C.Code 9–102(2), the UCC is not applicable to tax liens acquired by the District. Therefore, the principle of "first in time, first in right" was found to be the general rule to be applied in priority disputes between the D.C. Department of Finance and Revenue and private secured parties. However, the Court noted an important exception to this rule. The exception is that:

"[t]he legislature may, by statute, declare that the District's claim for taxes shall be liens preferred to all other liens or security interests of whatever kind and however created, and whether attaching or perfected before or after the tax liens arises."

*Malakoff v. Washington, supra* at 435. 47 D.C.Code § 2609 [4] provides that:

"Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim. Neither the United States Marshal, nor a receiver, assignee, or any other officer shall sell the property of any person subject to tax under the terms of this chapter under process or order of any court without first determining from the Collector the amount of any such taxes due and payable by said person, and if there be any such taxes due, owing, or unpaid under this chapter, it shall be the duty of such officer to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature. Any person charged with the administration or distribution of any

---

(3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;"

*See* H.R.Rep. 595, 95th Cong., 1st Sess. 382 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

4. 47 D.C.Code § 2609 has been renumbered to 47 D.C.Code § 2012.

such property as aforesaid who shall violate the provisions of this section shall be personally liable for any taxes accrued and unpaid which are chargeable against the person otherwise liable for tax under the terms of this section, (May 27, 1949, 63 Stat. 117, ch. 146, title I, § 132; 1973 Ed., § 47–2609.)"

The Court in *Malakoff* held that the second sentence of § 2609 which reads that "such officer .... first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature" gives to the District of Columbia sales tax claims "a first priority in terms absolute." *Malakoff v. Washington, supra* at 436. *See United States v. Saidman,* 231 F.2d 503, 509 (D.C.Cir.1956). The Court therefore found that the legislature by statute had intended to make the District of Columbia's claim for sales taxes preferred over all other liens or security interests.

In the case presently before this Court, the perfected security interest of the SBA arose on January 26, 1979, when a financing statement was filed with the D.C. Recorder of Deeds. The sales tax lien of D.C. arose on December 8, 1980 when its sales tax liens were filed with the D.C. Recorder of Deeds. While "first in time, first in right" is the general principle followed in the District, it cannot be applied in this case. In view of the statutory priority provided for under the District of Columbia Code, and with particular reference to the interpretation of that Code section provided in the *Malakoff* case, the District's claim for taxes must be deemed absolute in priority. Accordingly, the Court concludes, with reference to the conflicting security interests of the SBA and D.C., that the District of Columbia's tax lien must take precedence.[5]

In the context of this adversary proceeding brought by the trustee in bankruptcy, the D.C. tax lien, although superior to the lien of the SBA, is clearly subordinate to the first five priorities of Section 507(a) of the Bankruptcy Code. This is expressly mandated and required by Section 724(b) for the reasons already set forth above. Accordingly, the proceeds of sale in this proceeding must be retained by the trustee in bankruptcy until such time as the issue of priority of claims is resolved. At that time, the proceeds will be distributed pursuant to Section 507(a)(1)—(5) and any surplus pursuant to the requirements of Section 724(b)(3) will then go to the District of Columbia Government. Based on the amounts involved, and the limited proceeds of sale available, any further surplus which would ordinarily go to the SBA will probably not be available.

---

5. Such a result is mandated even though the security interest asserted in this proceeding is one by a governmental agency—the SBA. In the event of insolvency owing for debts to the United States, 39 U.S.C. § 191, the absolute priority statute would not protect the SBA in view of the Court of Appeals ruling in *United States v. Saidman,* 231 F.2d 503, 509 (D.C.Cir. 1956). In lieu of a manifestation of insolvency, which is specifically required before the invocation of rights under the absolute priority statute (*see United States v. Oklahoma*), 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638 (1923)), the Small Business Administration is bound by the application of state law priority standards. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).