Opinion for the Court filed by Circuit Judge FRIEDMAN.
 

 FRIEDMAN, Circuit Judge:
 

 This is an appeal from an order of the United States District Court for the District of Columbia, 27 B.R. 153, giving a perfected lien held by the Small Business Administration (SBA) priority in bankruptcy over a later-perfected lien for unpaid sales taxes of the District of Columbia (District). We reverse.
 

 I.
 

 The facts are simple and uncontested. In December 1980, Sardis, Inc., filed a petition in the United States Bankruptcy Court for the District of Columbia for an arrangement under chapter 11 of the Bankruptcy Code. On May 4, 1981, the proceeding was converted to a chapter 7 liquidation. On September 4, 1981, pursuant to an order of the bankruptcy court, the Trustee in Bankruptcy, Paul D. Pearlstein, sold certain assets of the Sardis estate for $70,000.
 

 At the time of the sale, the assets were subject to two liens. The National Savings & Trust Company (the bank) had a security interest in Sardis’ assets covering a loan to Sardis. The SBA had guaranteed the loan by the bank pursuant to 15 U.S.C. § 636 (Supp. V 1981) and 13 C.F.R. § 122 (1982). On January 26, 1979, after Sardis had defaulted on the loan, the bank perfected its security interest by recording it with the District of Columbia Recorder of Deeds.
 

 Following Sardis’ default, the SBA paid the bank the portion of the loan it had guaranteed. On May 15, 1981, the bank assigned its claim and perfected security interest to SBA. As of May 12, 1981, the SBA’s claim against the Sardis estate, secured by the transferred lien, was approximately $630,000.
 

 The second lien against the Sardis assets was held by the District for unpaid sales taxes of approximately $81,000. The District had perfected that lien on December 8, 1980, almost two years after the bank had perfected its lien, by recording with the Recorder of Deeds.
 

 Since the proceeds of the sale of the Sardis assets were insufficient to satisfy both liens, the trustee in bankruptcy filed a complaint in the bankruptcy court to determine their relative priority. He requested
 
 *1171
 
 authorization to distribute the proceeds to the SBA.
 

 The bankruptcy court, 17 B.R. 660, awarded the District tax lien priority over the SBA lien. It held that under the pertinent provision of the Bankruptcy Act (section 724(b), discussed below), the question of priority should be determined “outside of the Bankruptcy Code .. . pursuant to District of Columbia law.” The court then ruled that a District statute, 47 D.C.Code § 2012 (1981), made “the District of Columbia’s claim for sales taxes preferred over all other liens or security interests.” Finally, the court held that although the District tax lien was “superior to the lien of the SBA,” it was “clearly subordinate to the first five priorities of section 507(a) of the Bankruptcy Code.” The court therefore directed the trustee to retain the sale proceeds until “the issue of priority of claims is resolved,” at which time the proceeds will be distributed first pursuant to section 507(a), and then any surplus will go to the District.
 

 The district court reversed. It held that under section 724(b), “the concept of ‘first in time, first in right’ applies with full force when a perfected security interest is faced with a statutory tax lien,” and that since the SBA lien had been perfected prior to the District tax lien, the SBA lien was entitled to priority in the distribution of the proceeds of the sale of Sardis’ assets. The court ruled that “[t]he D.C. law relied on [by the bankruptcy court] is not applicable to the underlying bankruptcy proceeding ... [and] was not enacted to affect federal proceedings.”
 

 II.
 

 The relevant statutory provision in this case, section 724(b)(1) of the Bankruptcy Code, 11 U.S.C. § 724(b)(1) (Supp. V 1981), provides:
 

 (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—
 

 (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
 

 [[Image here]]
 

 The district court held that the term “senior” in subsection (1) “should have its ordinary meaning of first in time,” and that “[t]he concept of first in time, first in right applies with full force when a perfected-security interest is faced with a statutory tax lien.” The court cited a House Committee Report and Collier on Bankruptcy, which it treated as establishing that the scheme for distribution Congress set out in section 724(b)(1) subordinates tax liens to liens that §.re senior to the tax lien under the first in time principle.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977),
 
 reprinted in
 
 U.S.Code Cong. & Ad.News 5787, at 5963 (1978).
 
 See also
 
 Collier,
 
 Bankruptcy
 
 ¶ 723.03 (15th ed. 1980). Applying this principle to the two competing liens in the case; the court thus determined that “[t]he claim of the Small Business Administration under the senior perfected security interest shall be given priority over the junior D.C. tax lien.”
 

 A more detailed analysis of the legislative history of that provision and its predecessors, however, shows that in section 724(b)(1) Congress did not establish a federal system of priorities between tax and nontax liens. That history establishes that Congress intended, in bankruptcy proceedings, for the relative priority of tax and nontax liens to be determined according to the law that governs the priority of these competing interests outside of bankruptcy.
 

 A. The starting point in the analysis is the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898), which codified and changed the scattered bankruptcy statutes then existing.
 

 A basic premise of that Act, incorporated in section 70(a), was that, upon the institution of bankruptcy proceedings, the trustee in bankruptcy acquired the interest of the debtor in the property of the estate, subject to all valid liens against the property.
 
 See
 
 
 *1172
 
 30 Stat. 565 (“The trustee of the estate of a bankrupt, upon his appointment and qualification ... shall in turn be vested by operation of law with the title of the bankrupt .... ”).
 
 See also Zartman v. First National Bank,
 
 216 U.S. 134, 138, 30 S.Ct. 368, 369, 54 L.Ed. 418 (1910) (“[T]he trustee takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens and equities.”);
 
 W.F. Pigg & Son v. United States,
 
 81 F.2d 334, 335-36 (10th Cir.1936) and cases cited therein.
 
 See also
 
 Collier,
 
 Bankruptcy
 
 ¶ 67.20, at 208.1 (14th ed. 1978).
 

 Section 67(d) of that Act explicitly recognized as valid against the trustee» liens that were not expressly invalidated by other provisions in the Act. 30 Stat. 564. “Section 67d of the Act of 1898 was intended to be a saving clause for the protection of holders of valid liens not affirmatively invalidated by the Act.” Collier,
 
 Bankruptcy
 
 ¶ 67.20, at 209 (14th ed.).
 

 Neither section 67 nor
 
 any
 
 other provisions of the Act established priorities between competing liens that were valid in bankruptcy. Although section 64 of the Act, 30 Stat. 563, created priorities between unsecured claims, those priorities did not include or apply to liens valid against the estate.
 
 See City of Richmond v. Bird,
 
 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543 (1919). In fact, liens valid in bankruptcy were required to be satisfied prior to distributions to priority claimants under section 64.
 
 See, e.g., Miners Sav. Bank of Pittston, PA. v. Joyce,
 
 97 F.2d 973, 976 (3d Cir.1938).
 

 Since the Bankruptcy Act of 1898 did not itself establish priorities between competing liens, the federal courts looked to nonban-kruptcy law to determine priority among these secured claims.
 
 See, e.g., Lerner Stores Corp. v. Electric Maid Bake Shops,
 
 24 F.2d 780, 782 (5th Cir.1928);
 
 Preetorius v. Anderson,
 
 236 F. 723, 724 (5th Cir.1916);
 
 In re Byrne,
 
 97 F. 762, 765 (S.D.Iowa 1899). The rationale of those decisions was both the failure of the Act to provide for priorities between liens valid in bankruptcy, and the basic theory of the Act, reflected in the sections discussed above, that the trustee took the property of the estate subject to existing valid liens.
 
 See Martin v. Orgain,
 
 174 F. 772, 779 (5th Cir.1909),
 
 cert. denied,
 
 216 U.S. 619, 30 S.Ct. 574, 54 L.Ed. 640 (1909);
 
 In re Yoke Vitrified Brick Co.,
 
 180 F. 235, 238 (D.Kan.1910).
 

 B. Although the Chandler Act of 1938 (ch. 575, 52 Stat. 840 (1938)) substantially revised the 1898 Bankruptcy Act, it did not alter this rule of lien priorities.
 

 The Chandler Act retained the basic treatment of liens under the 1898 Act. Section 70(a) of the Chandler Act, 52 Stat. 879-80, with some changes not relevant here, kept intact the principle of section 70(a) of the 1898 Act, which vested the trustee with the property of the estate subject to all valid liens against it.
 

 Although Congress deleted from the Act section 67(d), which explicitly validated liens not expressly invalidated by the Act, the legislative history indicates that this deletion did not change the principle of that provision. The House Committee Report stated that “the content of subdivision d is provided for in new subdivision a(3) [of section 67], and the new provisions of section 60b, section 67d, and section 70e.” H.R.Rep. No. 1409, 75th Cong., 1st Sess. 32 (1937). These latter provisions dealt with liens that were invalid under the Act. “It is apparent, therefore that the draftsmen of the 1938 Act desired generally to specify only what should be
 
 invalid.”
 
 Collier,
 
 Bankruptcy
 
 ¶ 70.70, at 771 (14th ed. 1978) (emphasis in original). If these invalidating provisions did not cover a lien, the Chandler Act treated it “as creating or embodying a right valid against the trustee.”
 
 Id. See In re Beardsley,
 
 38 F.Supp. 799 (D.Md.1941).
 

 The Chandler Act also amended Section 64 of the Bankruptcy Act of 1898, which had recognized certain state priorities among unsecured creditors, to establish a uniform set of federal priorities for unsecured creditors. 52 Stat. 874. Prior to 1938, the Bankruptcy Act had given effect to state priority statutes that granted “favored treatment” to “certain classes of
 
 *1173
 
 creditors. S.Rep. No. 1159, 89th Cong., 2d Sess.,
 
 reprinted in
 
 U.S.Code Cong. & Ad. News 2456 (1966). As a consequence, “the amount available for distribution” to other creditors was “considerably diminished and often entirely consumed. To increase their share of the estate, various classes of general creditors at first sought priority status under state law.”
 
 Id.
 
 Thus, “in the interest of national uniformity in distributions, [section 64 of] the Chandler Act eliminated the recognition of State priorities in bankruptcy proceedings.”
 
 Id.
 
 at 2456-57. In amending this provision, however, Congress did not alter the rule, which existed under the 1898 Act, that the statutory priorities among creditors did not affeet or apply to liens.
 

 Finally, Congress added several new provisions in the Chandler Act dealing with statutory liens. Under new section 67(b), 52 Stat. 876-77, certain “statutory liens ... [including] statutory liens for taxes and debts owing to ... any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee ... . ”
 
 See also
 
 H.R.Rep. No. 1409,
 
 supra,
 
 at 31; S.Rep. No. 1159,
 
 supra,
 
 at 2457, indicating that the Chandler Act “gave explicit recognition for the first time to the general validity of statutory liens” against the trustee in bankruptcy. Although statutory liens had been recognized in bankruptcy prior to 1938
 
 (see
 
 Collier,
 
 Bankruptcy
 
 ¶ 67.24, at 305 (14th ed. 1978)), the trustee could avoid those liens under section 60 of the 1898 Bankruptcy Act in certain circumstances (i.e., if the lien resulted from a transfer of property shortly before the debtor filed a bankruptcy petition and the effect of the transfer was to enable a creditor “to obtain a greater percentage of his debt than any other of such creditors in the same class”). 30 Stat. 562. Under section 70 of the 1898 Act, these liens also were invalid if not perfected prior to bankruptcy.
 
 See
 
 Collier,
 
 Bankruptcy
 
 ¶ 67.20 (14th ed. 1978). In section 67(b), Congress intended to resolve both of these issues.
 
 Id.
 

 In section 67(c) of the Chandler Act, Congress dealt with the problem of “spurious liens.” S.Rep. No. 1159,
 
 supra,
 
 at 2456. Although state priorities no longer would be applied in bankruptcy, statutory liens were now valid against the trustee under section 67(b). Thus, “a class of creditors could obtain State legislation transforming their debts into liens ...,” which would give them a “position superior not only to all other [unsecured creditors] but to priority claimants [under section 64 of the Act] as well.”
 
 Id.
 
 Congress recognized that “[t]hese spurious liens were in reality disguised priorities and the effect of their recognition would be to distort the federally ordered scheme of distribution by depressing the position of priority claimants [under section 64].”
 
 Id.
 

 Accordingly, in section 67(c), Congress subordinated “the most transparent liens” to those priorities recognized by section 64 that “it considered to be the most important
 
 Id.
 
 Specifically, the provisions indicated that “statutory liens, including liens for taxes or debts owing to the United States or to any State or subdivision thereof .. . shall be postponed in payment to the debts specified in section 64[a(l) and (2)] . .. . ” 52 Stat. 877. Among the liens subordinated to certain priority claims were federal and state tax liens, which had proliferated at all levels of government “with little formality and frequently without any of the normal attributes of a lien interest . . . . ”
 
 Id.
 
 This subordination of certain liens to the priorities established in section 64 was a new concept in bankruptcy law.
 

 Despite these changes, the Chandler Act did not alter the rule under the Bankruptcy Act of 1898 that priorities between liens valid against the trustee were to be determined by nonbankruptcy law. Neither the new provisions dealing with statutory liens (section 67(b) and (c)) nor any other provision of the Act established priorities among these liens, or between statutory and other liens. There is no indication that in the Chandler Act Congress intended to prescribe a different rule for determining priority among statutory liens than among other liens. “[T]he general rule [is]
 
 *1174
 
 that ' * * * all obligations of a legal and equitable nature, except those expressly affected by the terms of the act, remain undisturbed by bankruptcy.’”
 
 Brookhaven Bank & Trust Co. v. Gwin,
 
 253 F.2d 17, 19 (5th Cir.1958) (citing
 
 Wilson v. Duncan,
 
 61 F.2d 515, 516 (5th Cir.1932)).
 

 Thus, as with other liens valid against the trustee, under the Chandler Act the courts looked to nonbankruptcy law to determine the priority of statutory liens.
 
 See, e.g., Brookhaven Bank & Trust Co., supra; Reconstruction Finance Corp. v. Kern-Limerick, Inc.,
 
 192 F.2d 978 (8th Cir.1951). The courts based this approach both on section 67(b) of the Chandler Act (which recognized statutory liens as valid against the trustee) and on the basic policy of the bankruptcy laws that recognized valid liens as they existed outside bankruptcy.
 
 See In re Quaker City Uniform Co., Inc.,
 
 238 F.2d 155, 157 (3d Cir.1956),
 
 cert. denied sub nom. Veloric v. College Hall Synthetic Fashions & Synthetic Specialists, Inc.,
 
 352 U.S. 1030, 77 S.Ct. 596, 1 L.Ed.2d 599 (1957);
 
 City of New Orleans v. Harrell,
 
 134 F.2d 399, 400 (5th Cir.1943);
 
 Seymour
 
 v.
 
 Wildgen,
 
 137 F.2d 160, 161 (10th Cir.1943);
 
 Commercial Credit Co. v. Davidson,
 
 112 F.2d 54, 55 (5th Cir.1940).
 

 C. When Congress revised the Chandler Act in 1966 (Pub.L. No. 89-495, 80 Stat. 268 (1966)), it again did not alter the prevailing rule for determining lien priorities. Congress, however, changed section 67(c), which had subordinated statutory liens to certain claims, in several respects. First, under the amended provision, renumbered as section 67(c)(3), 80 Stat. 268, the only statutory liens subordinated to the priorities established in section 64 were tax liens. Collier,
 
 Bankruptcy
 
 ¶ 67.20, at 228 (14th ed. 1978). All other statutory liens either were invalidated by other subsections of the Act or, if valid in bankruptcy, were not subordinated.
 

 Second, Congress amended section 67(c) to resolve a problem that had developed under that section between competing liens. S.Rep. No. 1159,
 
 supra,
 
 at 2458. Sincé section 67(c) had only deferred the recognition of certain liens, a state law could place a lien thus deferred “in a position senior to liens unaffected by postponement.”
 
 Id.
 
 To address an aspect of this problem, in section 67(c)(3) Congress provided that “every tax lien ... shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act. Where such a tax lien is prior in right to liens indefeasible in bankruptcy . ..,” the proceeds from the sale of the estate’s assets shall be distributed to the priorities under section 64 (up to the extent of the tax lien). If any funds remain after satisfying these priorities and “after allowing for prior indefeasible liens .. .,” the excess “is to be paid to the holder of the tax lien.” 80 Stat. 269.
 
 See also
 
 S.Rep. No. 1159,
 
 supra,
 
 at 2463 (1966).
 

 This amendment of section 67(c), like the prior changes previously discussed, did not disturb the prevailing rule under the Chandler Act that the priority of statutory liens should be determined under the applicable nonbankruptcy lien law.
 
 See
 
 Collier,
 
 Bankruptcy
 
 ¶ 67.27, at 391 (14th ed. 1978) (“prior in the sense used should mean prior in right according to the applicable nonbankruptcy law”). This conclusion is confirmed by the citation in the Committee Reports on the 1966 legislation of several earlier decisions indicating that section 67(c) of the Chandler Act did not affect the existing priorities between competing liens under applicable nonbankruptcy lien law.
 
 See
 
 S.Rep. No. 1159,
 
 supra, reprinted in
 
 U.S.Code Cong. & Ad.News at 2463,
 
 citing with approval, California State Dep’t of Employment v. United States,
 
 210 F.2d 242 (9th Cir.1954);
 
 In re American Zyloptic Co.,
 
 181 F.Supp. 77, 80-81 (E.D.N.Y.1960);
 
 In re Empire Granite Co.,
 
 42 F.Supp. 450 (M.D.Ga.1942).
 

 As
 
 California State Dep’t of Employment,
 
 210 F.2d at 244, stated, “[t]he sole concern of Congress in enacting § 67, sub. c was to insure payment of administrative expenses and small wage claims [ahead of certain lien claims].”
 
 See also
 
 S.Rep. No. 1159,
 
 supra, reprinted in
 
 U.S.Code Cong. & Ad.News at 2458-63
 
 (passim):
 
 “[Section 67(c) ] does not affect or impair the priorities of liens recognized by § 67, subd. b
 
 *1175
 
 .... The section deals only with the relationship of [certain] lienholder[s] ... to unsecured creditors having priorities under [section 64]. It does not attempt to deal with priorities as between secured creditors under § 67, sub. b.” 210 F.2d at 244 (emphasis omitted). When liens for taxes are valid under section 67(b), “the rank and position of such liens is determined by applicable lien law.” 210 F.2d at 243.
 
 See also
 
 Collier,
 
 Bankruptcy
 
 ¶ 67.27[3], 382-83 and 394 (14th ed. 1978) (“[A]s to liens subordinated by § 67c, the bankruptcy court must depend on nonbankruptcy law for rules on marshalling such liens.”); Kennedy,
 
 The Bankruptcy Amendments of
 
 1966, 1 Ga.L.Rev. 149, 166; King,
 
 Statutory Liens —1966 Amendment of section 67 of the Bankruptcy Act,
 
 55 Ky.L.Rev. 542, 559 (section 67c “gives recognition to the law outside the Bankruptcy Act”).
 

 In sum, by 1978 it was regarded as settled that the priority of liens recognized in bankruptcy was to be determined not by the Bankruptcy Act, but by the general nonbankruptcy lien law.
 
 See
 
 4 Collier,
 
 Bankruptcy
 
 ¶ 67.21, at 258-59 (14th ed. 1978). The courts repeatedly applied this rule, and Congress, despite the numerous occasions on which it had amended the relevant provisions of the Bankruptcy Code, had not indicated any intent to change it.
 

 D. In 1978, Congress again substantially revised the bankruptcy law. It made many substantive changes and also rearranged and regrouped numerous provisions. Once again, however, it did not change the settled rule that the relative priority among valid liens was to be determined by nonbankruptcy law.
 

 Section 724(b) subordinates tax liens to certain prior claims, and sets forth in detail the consequences of this subordination on the order of distribution to all claimants against property in an estate (or its proceeds) that is subject to a tax lien.
 

 The first priority in distribution (subsection (1)) is for a lien that is “senior” to the tax lien. The term “senior” replaces the phrase “prior in right” in section 67(c)(3) of the Chandler Act. The second priority (subsection (2)) is for claims specified in section 507(a)(l)-(5) (administration expenses, wage claims, etc.) up to the amount of the tax lien. The third priority (subsection (3)) is for the tax lien. The fourth priority (subsection (4)) is for a lien that is “junior” to the tax lien. The last priority in distribution is for the estate.
 

 These provisions specify the effect of the subordination of a tax lien on the various other types of secured and unsecured claims. They do not, however, attempt otherwise to change the order of distribution that would exist among those nontax claims apart from the subordination of the tax lien. As indicated in the legislative history, “[t]he result of these [subsections] are to leave senior and junior lienors and holders of unsecured claims undisturbed.” H.R. Rep. No. 595, 95th Cong., 1st Sess. 382 (1978),
 
 reprinted in
 
 U.S.Code Cong. & Ad. News 6338 (1978).
 

 These provisions also do not define the relative priorities within a particular category of liens (i.e., between two or more liens “senior” to a tax lien). As section 724(c) indicates, “[i]f more than one creditor is entitled to distribution under a particular subparagraph of subsection (b) ..., distribution to such creditors ... shall be in the same order as distribution to such creditors would have been other than under this section.” Under this provision, “[distribution to those lien holders will be in the order of their respective rights in the absence of the tax lien and rules of section 724(b).” Collier,
 
 Bankruptcy
 
 ¶ 724.05, at 724-29 (15th ed. 1983).
 

 The statute does not define whether a lien “is senior to such tax lien” (subsection (1)) or “is junior to such tax lien” (subsection (4)), or state upon what basis the determination of those priorities shall be made. There is no indication that when Congress in section 724(b) restructured and restated the provisions covering the distribution of property in the estate that was subject to tax liens, it intended to change the prior settled law and practice that the relative priorities of liens in bankruptcy (including tax liens subordinated by section 67(c)(3) of
 
 *1176
 
 the Chandler Act) were to be determined according to the nonbankruptcy lien law, or to create a new federal rule governing relative priority between tax and other liens. If Congress had intended to make such a drastic change in existing bankruptcy law, presumably it would clearly and explicitly have so stated or indicated. It did neither.
 

 To the contrary, the legislative history of the 1978 Bankruptcy Act indicates that Congress did not intend substantially to alter the rule of section 67(c)(3).
 
 See
 
 H.R. Rep. No. 595,
 
 supra,
 
 at 382,
 
 reprinted in
 
 U.S.Code Cong. & Ad.News 6338 (1978) (“Subsection (b) ... is derived from section 67c(3) without substantial modification in result.”); S.Rep. No. 989, 95th Cong., 1st Sess. 96,
 
 reprinted in
 
 U.S.Code Cong. & Ad.News 5882 (1978) (subsection (b) “retains the rule of present bankruptcy law (§ 67(c)(3) of the Bankruptcy Act) .... ”).
 

 We therefore conclude that in section 724(b)(1) Congress did not by implication define “senior” to incorporate the settled federal principle that “the first in time is the first in right”
 
 (United States v. New Britain,
 
 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)). To determine whether the SBA lien was “senior” to the District sales tax lien under the statute, it is therefore necessary to look beyond the Bankruptcy Code to the pertinent nonbankruptcy lien law.
 

 III.
 

 If the competing nontax lien in this case had been that of a state or private party, there would be no question that the applicable nonbankruptcy law for determining priority between the liens would be that of the District. Since the nontax lien is that of the United States, however, federal law governs, because “the priority of liens stemming from federal lending programs must be determined with reference to federal law.”
 
 United States v. Kimbell Foods, Inc.,
 
 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979).
 

 As the Court in
 
 Kimbell Foods
 
 pointed out, however
 
 (id.
 
 at 727-28, 99 S.Ct. at 1457-58):
 

 Controversies directly affecting the operations of federal programs, although governed by federal law do not inevitably require resort to uniform federal rules. [Citations omitted.] Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy “dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.” [Citations omitted.]
 

 Kimbell Foods
 
 also involved an SBA loan that arose out of the same guarantee program involved in the present case. There, as here, a borrower gave security interests to a bank to secure a bank loan which the SBA guaranteed. The debtor defaulted, the SBA paid under its guarantee, and the bank assigned the security interest to the SBA. The contest was between the SBA and another lender whose loan the SBA had not guaranteed and which sought to foreclose a security interest the lender had given it.
 

 In
 
 Kimbell Foods,
 
 the Court set forth three considerations that inform the decision whether to fashion a national uniform federal rule or to apply state law to “[controversies directly affecting the operations of federal programs”: (1) whether the nature of the federal program requires uniform rules throughout the country or is such that incorporating state law as the federal rule of decision would not hinder administration of the program; (2) whether “application of state law would frustrate specific objectives of the federal programs,” thus requiring “special rules solicitous of those federal interests”; and (3) “the extent to which application of a federal rule would disrupt commercial relationships predicated on state law.” 440 U.S. at 727-29, 99 S.Ct. at 1457-59 (footnotes omitted).
 

 Applying those criteria to the SBA loan guarantee program there at issue, the Court concluded that no valid “concrete reasons” had been given “for rejecting well-established commercial rules which have proven workable over time”
 
 (id.
 
 at 740, 99 S.Ct. at
 
 *1177
 
 1464) and substituting the federal “first in time, first in right” principle that had been developed for determining the priority of federal tax laws.
 
 Id.
 
 at 733-36, 99 S.Ct. at 1461-62. The Court therefore determined that “the prudent course is to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation.”
 
 Id.
 
 at 740, 99 S.Ct. at 1464 (footnote omitted).
 

 Specifically, the Court pointed out that SBA procedures were adapted to and reflected state laws (id. at 729-32, 99 S.Ct. at 1459-60); that “[bjecause each application currently receives individual scrutiny, the agencies can readily adjust loan transactions to reflect state priority rules, just as they consider other factual and legal matters before disbursing Government funds” (id. at 733, 99 S.Ct. at 1461); that “when the United States operates as a moneylend-ing institution under carefully circumscribed programs, its interest in recouping the limited sums advanced is of a different order” than its need to collect taxes, upon which the special priorities governing federal tax liens rest (id. at 734, 99 S.Ct. at 1461); and that “[b]y carefully selecting loan recipients and tailoring each transaction with state law in mind, the agencies are fully capable of establishing terms that will secure repayment.”
 
 Id.
 
 at 736, 99 S.Ct. at 1462 (footnote omitted).
 

 Although there are differences between this case and
 
 Kimbell Foods,
 
 we conclude that the basic analysis in
 
 Kimbell Foods
 
 also calls for application of District law as the federal standard for determining the relative priorities of the SBA and the District lien here involved.
 

 There is no indication that application of local law would hinder the operation of the SBA loan guarantee program in the District any more than its application would have hindered the program involved in
 
 Kimbell Foods.
 
 Although the SBA could not structure its loan guarantee so as to avoid the application of the priority District taxes have under local law, in deciding whether to guarantee a loan and setting the terms of the guarantee the agency can take into account the likelihood that repayment may be jeopardized by the application of the District priority statute.
 

 Finally, although application of the federal rule would not disrupt existing commercial relationships, it would frustrate the special priority that Congress created for District tax claims to aid the District in collecting its taxes. It seems unlikely that when Congress left the relative priority of tax liens in bankruptcy to be determined by nonbankruptcy law, it intended to vitiate the special priority it had created for the District’s sales tax claims.
 

 We therefore hold that in determining the relative priority of the SBA lien and the District tax lien, the appropriate federal law is the District law governing lien priorities.
 

 IV.
 

 The lien priority law of the District generally applies the “first in time, first in right” principle.
 
 Malakoff v. Washington,
 
 434 A.2d 432 (D.C.Cir.1981).
 
 See also
 
 D.C. Code UCC § 28: 9-310 (1981). Section 2012 of the D.C.Code (D.C.Code § 47-2012 (1981)), however, provides an exception to this rule. Claims for District sales tax “shall be a prior and preferred claim” when “the business or property of any person subject to tax under the terms of this chapter, shall be placed in ... bankruptcy ... . ” Section 2012 further states that before property subject to the sales tax can be sold, it is “the duty of [the officer selling the property] to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature.”
 
 Id.
 

 The District of Columbia Court of Appeals has construed this latter provision to give the District’s claim for sales taxes “a first priority in terms absolute,” whether or not secured by a lien.
 
 Malakoff,
 
 434 A.2d at 437 (quoting
 
 United States v. Saidman,
 
 231 F.2d 503, 509, 97 App.D.C. 344 (D.C.Cir.1956). The latter conclusion in
 
 Malakoff
 
 
 *1178
 
 rested upon the court’s determination that “Congress (as the legislature of the District ...) has sufficiently manifested an intent that claims for ... sales taxes be absolutely prior to all other encumbrances.” 434 A.2d 435.
 

 Thus, under District law, the District lien for unpaid sales taxes has priority over the earlier-perfected SBA lien.
 

 SBA argues, and the district court apparently concluded, that section 2012 is inapplicable because it is a local statute of the type Congress intended to be inapplicable under the Bankruptcy Act, namely, one by which a state attempts to give an unsecured claim a higher priority in bankruptcy by treating it as a lien.
 
 See supra,
 
 pp. 7-8. Section 2012, however, is not a state statute designed to displace the priorities in the Bankruptcy Act by creating liens for otherwise junior claims. It is a statute Congress enacted to aid the District in collecting a particular type of District tax, the sales tax. There is no reason to think that Congress intended section 724(b) of the Bankruptcy Code to supersede the priority for District sales taxes liens that Congress provided in section 2012.
 

 The SBA contends, however, that in
 
 District of Columbia v. Greenbaum,
 
 223 F.2d 633, 96 App.D.C. 168 (D.C.Cir.1955), this court held that section 2012 is inapplicable to federal bankruptcy proceedings. The holding in
 
 Greenbaum,
 
 however, was much narrower. '
 

 That case involved the predecessor to section 2012, section 132 of the District of Columbia Revenue Act of 1949. Section 132 contained the same language as section 2012 giving the District absolute priority for unpaid sales taxes “[wjhenever the business or property of any person subject to tax under ... this chapter, shall be placed in receivership or bankruptcy .... ” Relying on this provision, the District asserted for its unsecured sales tax claim a priority in bankruptcy superior to that section 64(a) of the Bankruptcy Act gave to taxes owing to the states or their subdivisions. Although the tax claims at issue in
 
 Green-baum
 
 had priority under the bankruptcy law, they were subordinate to administration expenses, wage claims, and certain creditor expenses.
 

 This court sustained the referee’s determination that the District’s sales tax claim was entitled only to the Bankruptcy Act priority under section 64(a) for such taxes (which meant that the District sales tax claim was subordinated to administration expenses, etc.), and not to the higher priority under D.C.Revenue Code, section 132. The court interpreted the word “bankruptcy” in section 132 “to embrace only proceedings under local insolvency acts” and not those under the federal Bankruptcy Act. 223 F.2d at 635, 96 App.D.C. at 170. The court stated that the Bankruptcy Code “expressly fixed the policy which substantially governs the priorities of federal and state taxes,” and that when Congress later enacted section 132, “[i]t is unrealistic to assume that [it] intended to create an exception sharply altering this long and well-considered policy .without express reference to the Bankruptcy Act.” 223 F.2d at 636, 96 App.D.C. at 171.
 

 In the present case, in contrast, the District is relying upon its sales tax priority not to change the general priorities of unsecured tax claims under the Bankruptcy Code (as it did in Greenbaum), but only to determine the priority of its sales tax lien under the general lien law of the District which, as we have held, Congress intended to apply in determining tax lien priorities in bankruptcy. The issue here is whether District law gives the District sales tax lien an absolute priority. Our affirmative answer to that question does not create any exception to a well settled policy of the Bankruptcy Act (as would have been the case in Greenbaum), but instead is consistent with that Act.
 

 V.
 

 The order of the district court is reversed, and the judgment of the bankruptcy court is reinstated.
 

 It is so ordered.