**RECONSTRUCTION FINANCE CORP. v. KERN-LIMERICK, Inc.**

No. 14415.

United States Court of Appeals, Eighth Circuit.

Dec. 12, 1951.

Barber, Henry & Thurman, Little Rock, Ark., on brief for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an order awarding appellee, Kern-Limerick, Inc., a mechanic's lien on the property of a bankrupt prior and superior to the mortgage lien of the Appellant, Reconstruction Finance Corporation. The basic facts are not in dispute.

One Fred Shores at the times involved in this controversy was engaged in the business of heavy earth excavations. In August, 1945, he obtained a contract to strip and mine an extensive area near Sweet Home, Arkansas. To perform the work of this undertaking he operated a number of pieces of heavy equipment, including tractors. Appellee, during the times in controversy, was and is engaged in the business of repairing heavy equipment of the kind operated by Shores. In September, 1945, Shores entered into a contract with appellee to maintain and repair the equipment for use on the Sweet Home job, and from the date of this contract until Shores filed his petition in bankruptcy on July 3, 1946, appellee furnished materials and performed labor on the equipment. It parted with possession of this equipment but within the time provided by the laws of Arkansas it filed a notice of lien in the office of the circuit court of the county of Shores' residence and principal place of business, asserting a lien on the equipment involved. In the meantime Shores made application to the appellant for a loan of $50,000, furnishing a financial statement showing, among other things two lists of accounts payable, one dated February 28, 1946, and the other dated March 25, 1946, on each of which appellee appeared as a creditor in the sum of $13,299.95. A later list of creditors was filed by Shores and this also contained the account due appellee. The loan application was approved May 6, 1946, whereupon Shores executed a promissory note for $50,000 with interest at four per cent per annum and as security for the note executed a mortgage covering the equipment involved in this proceeding, as well as other proper-

Harry E. Meek, Little Rock, Ark., on brief for appellant.

ty. The mortgage was recorded May 11, 1946, and is the basis of the claim of appellant which it asserts is prior and superior to the claim of appellee.

In Shores' bankruptcy proceeding the property, by consent of all concerned, was sold free of liens. Appellant filed its claim as a secured claim claiming a lien on the proceeds of the sale and appellee filed claim, claiming a lien on the proceeds of the sale in the amount of the unpaid balance due it. The issue was tried before the referee who entered findings of fact and conclusions of law determining the issues in favor of appellee and on petition for review the court approved and confirmed the referee's findings and order and in doing so recited that, "The written opinion submitted by the referee covers every contention made by the parties, and the court does not believe that it is necessary to add anything to the discussion of the referee in that opinion. Every question raised by the Reconstruction Finance Corporation was fully considered by the referee, and the conclusions reached by him in the Conclusions of Law filed herein and discussed in the opinion are correct * * *." Other facts will be developed during the course of this opinion.

■ Counsel in their points to be argued do not specifically challenge any ruling of the court as being erroneous but contend that the final decision is erroneous. They raise no question as to the rulings of the court on the admissibility of evidence; they raise no question as to the sufficiency of the evidence to sustain the findings, nor do they specifically challenge any conclusion of law. In this condition of the record, which in effect invites the court to search the record for error, we might well decline to consider the issues sought to be presented. Rule 11(b) of this court. However, as no objection is raised to the brief by appellee we shall proceed to a consideration of what appears to us to be the controlling issues.

■■ Appellee's lien is dependent upon the Arkansas statutes (Ark.Stat.1947, Secs. 51–404, 51–408, 51–412). Section 51–404 gives to automobile repairmen who perform work or labor or furnish any materials for the repair of any vehicle, including trucks, tractors and all other motor propelled conveyances, an absolute lien upon such vehicles for the sums of money due for the work, labor and materials. Section 51–408 provides that if the lienholder voluntarily parts with possession of the property upon which he has a lien he may preserve and avail himself of the lien by filing with the clerk of the circuit court of the county in which the debtor resides, within ninety days after such work or labor is done and materials furnished, a just and true itemized account for the demand due after allowing all credits, and containing description of the property to be charged with said lien, fortified by the affidavit of the lienholder. Section 51–412 provides, with certain exceptions not here material, that such a lien shall take precedence over and be superior to any mortgage or other obligation attaching against the property in all cases where the holder of such mortgage shall permit the property to remain in the possession of and be used by the debtor. The referee found and it stands without dispute that appellee not only performed the work in repairing and maintaining the machinery in question under contract with the owner but that within the time provided by statute; to-wit, ninety days after the last work was performed, it filed notice of lien with the clerk of the proper circuit court. Under the statute it had a lien from the date of its contract or from the time of performing the work or any part of it, during a period of ninety days after the last item of its account, and the Supreme Court of Arkansas has held that within such time the mechanic may bring action to foreclose his lien, in which event the filing of notice is unnecessary. Rust v. Kelley Bros.' Lumber Co., 180 Ark. 517, 21 S.W.2d 973; Simpson v. J. W. Black Lumber Co., 114 Ark. 464, 172 S.W. 883; Carr v. Hahn & Carter, 133 Ark. 401, 202 S.W. 685; Standard Lumber Co. v. Wilson, 173 Ark. 1024, 296 S.W. 27. The right of appellee to a lien attached at least at the time it commenced work if, indeed, not from the date of its contract. Either date was long prior to the date of the execution of the mortgage under which appellant asserts its lien. Weber

Implement & Automobile Co. v. Pearson, 132 Ark. 101, 200 S.W. 273, L.R.A.1918D, 327. The views of the Supreme Court of Arkansas on the question of priority of a mechanic's lien over the lien of a chattel mortgage find expression in the opinion of that court in Commercial Credit Co. v. Hayes-Lamb Motor Co., 174 Ark. 945, 298 S.W. 217. In the course of that opinion it is among other things said:

"Statutes giving liens for services in repairing personal property and purporting to make such liens superior to all others have been construed to create liens superior to previous chattel mortgages, even though the lien claimant had knowledge of the prior mortgage. * * *

" * * * It will be noted that the section quoted expressly reads that the lien provided for shall take precedence over and be superior to any mortgage attaching against the property in all cases where the holder of the mortgage shall permit the property to remain in the possession of and to be used by the purchaser. * * * The statute expressly states that the lien of the repairmen shall be superior to any mortgage. This would include mortgages given for the purchase money, as well as other mortgages."

Manifestly, appellee had a valid statutory lien on the property involved at and prior to the time appellant acquired its mortgage lien.

It is, however, urged that appellee by reason of it acts or silence should be estopped to assert, as against appellant, the priority of its lien and in this connection appellant seeks to invoke the equitable doctrine that if appellant and appellee are equally innocent the loss should fall on the one whose conduct most facilitated the fraud. The alleged fraud here relied on was that perpetrated by Shores in executing an affidavit in support of his application for a loan, certifying that the equipment was free of any lien or encumbrance, and the failure of appellee to notify appellant that it claimed a lien. The Shores affidavit was not made until after the loan had been approved and the money paid over to Shores and hence it could have had no possible influence in inducing the loan and appellee had no knowledge that such an affidavit was made and was certainly not responsible for it, nor do we think appellee at fault in not specifically advising appellant that it claimed a lien. The referee found that as a preliminary to obtaining the loan from appellant Shores furnished it certain information regarding his financial condition. As a part of this information two lists of his accounts payable were furnished, each, as heretofore recited, showing an item of $13,299.95 due appellee. The referee found that, "This information was at all times in the file upon which the R.F.C. based its decision to make the loan to Shores, and the agents of the R.F.C. were advised of the purpose for which the account was incurred, the nature of the business of Kern-Limerick, and that the account represented charges for repairs on Shores' equipment." The referee also found that, "On April 4, 1946, Kern-Limerick wrote a letter to the R.F.C. which was placed in the file of that agency as an appraisal of the value of Shores' equipment, which letter advised the R.F.C. that familiarity with the value of the equipment arose from the fact that Kern-Limerick had overhauled a large part of it." This clearly advised appellant not only of the indebtedness but of its nature. Notwithstanding this, appellant made no inquiry of appellee as to whether or not it claimed a lien for its account except that it took an affidavit from Shores on May 14, 1946, to the effect that no labor nor materials had been performed or furnished to repair the mortgaged equipment within 100 days and that there were no unpaid bills of any character for such labor or material. This statement was contradicted by the statements already furnished. Prior to making the loan to Shores appellant requested him to furnish an appraisal of the equipment that was to be included in the mortgage and at Shores' request appellee wrote a letter to appellant in which it approved the values Shores had extended against the equipment. This letter reads as follows:

"Mr. Fred Shores of the Fred Shores Company, El Dorado, Arkansas, has given us a list of equipment dated March 25, 1946,

which he has submitted to you as security for a contemplated loan.

"This is to advise you that we are familiar with this equipment, having overhauled a large part of it, and we consider the figures will be in line with present day values."

It is the contention of appellant that appellee was morally obligated to disclose its "unrecorded lien," and that its failure to do so amounted to a fraud, or at least precluded the appellee from now asserting that it claims a lien. It is to be noted that the letter discloses that appellee's familiarity with the equipment was gained by the fact that it had overhauled a large part of it, and the information which appellant had in its files as a matter of law charged appellant with the knowledge that appellee had a mechanic's lien on this property for the amount of its unpaid bill. There was nothing that called upon appellee to give appellant any further knowledge than it already had. It then knew as a matter of law that appellee had a lien and it knew that appellee's claim was not to be paid out of this loan, whereas, on the other hand, appellee had reason to expect and manifestly did expect that its lien would be paid out of this loan. In referring to this argument which apparently was made to the referee, the referee in his opinion among other things said: "While it would have been simple, as argued by counsel for the R.F.C., for Kern-Limerick, Inc., to have disclosed in its letter its claim of a lien, it would have been equally simple and more appropriate for the examiners of the R.F.C. to have picked up a telephone and called Kern-Limerick, Inc., to inquire about the possible lien. There is nothing in the record to indicate that at the time the letter was written there was any particular reason for Kern-Limerick, Inc., to suppose that it would be necessary for it to assert its lien, nor is an appraisal letter the normal vehicle for conveying such information."

As appellant knew of appellee's unpaid account and knew that it was for repairs on the very equipment to be covered by its mortgage, and knew that it was not the purpose of Shores to have this bill paid out of the money he was borrowing, it

seems passing strange that the examiner did not interview appellee for the purpose of ascertaining whether or not it claimed a lien. We find no basis for the application of the equitable doctrine that where two parties affected by a fraudulent transaction are equally innocent, the loss must fall on the one who most facilitated the fraud, because here the parties are not equally innocent. Neither do we think the appellee "most facilitated the fraud." If we might assume that the equities of these parties were equal, then the law must prevail and under the Arkansas law appellee had a prior lien on this property and we find no basis for invoking as against appellee the principle of estoppel.

The decision appealed from is therefore affirmed.