William BARSTOW, III, Trustee for the Bankruptcy Estate of MAR-KAIR, INC., Appellant,

v.

INTERNAL REVENUE SERVICE, Appellee.

No. A00–0206 CV (JKS).

United States District Court, D. Alaska.

Aug. 3, 2001.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, AK, for Appellant.

Michael R. Mills, Bankston & McCollum, Anchorage, AK, for Appellee.

## *ORDER*

SINGLETON, Chief Judge.

### INTRODUCTION

Presently before the Court is an appeal filed by Appellant William Barstow, III, Chapter 7 Trustee, for the bankruptcy estate of MarkAir, Inc. ("MarkAir" or "Debtor") of the United States Bankruptcy Court for the District of Alaska's decision that tax lien subordination under 11 U.S.C. § 724(b) is limited exclusively to tax claims which are secured by a statutory lien. *See* Docket No. 17 (Appeal); 20 (Opp'n); 24 (Reply).

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not in dispute. *See* Docket Nos. 17; 20. In June of 1992, MarkAir filed for bankruptcy under Chapter 11. *See* Docket No. 17 at 4.

At the time Debtor filed its petition, it had an outstanding air transportation excise tax liability for the first and second quarters of 1992. (The [Internal Revenue Service ("Service")] did not file a Notice of Federal Tax Lien with respect to these amounts against the Debtor.) Subsequently, the debtor concluded that it was entitled to an overpayment. The Service asserted a right to offset the anticipated overpayment against the outstanding tax liabilities of the Debtor and [Alaska International Industries, Inc.]. The Debtor then moved the Bankruptcy Court for an order al-

lowing it [to] use any overpayment to secure its obligations to the Airline Reporting Corporation (hereinafter "ARC"). This was necessary because, at the time the Debtor determined that it was due an overpayment, ARC, a ticket clearinghouse used by travel agents, demanded that the Debtor post a letter of credit in the amount of $1,800,000.00. If the Debtor failed to provide such a bond, ARC indicated that it would no longer clear tickets and, in essence, shut down the Debtor's operations.

In order to avoid an immediate shut down of the Debtor's operations, the Service and the Debtor compromised their positions and entered into an agreement with ARC (hereinafter the "Collateral Agreement").... The Service agreed to forgo its offset claim, as well as the statutory 90–day period to review the application for tentative refund. A portion of the overpayment, $1,800,000.00, would be deposited with the registry of the Bankruptcy Court as the ARC collateral (hereinafter the "ARC Collateral"), and the balance of the overpayment, approximately $1,300,000.00, would be paid to the Service. The amount of the ARC Collateral remaining upon termination of the Collateral Agreement, if any, then would be paid over [to] the Service.

As reflected in the Collateral Agreement, ARC was given a "first judicial lien position" against the ARC Collateral and the Service was granted a "second place judicial lien position" against the ARC Collateral.... By Order Authorizing MarkAir to Establish a Collateral Deposit Pursuant to 11 U.S.C. § 364(d), dated April 12, 1993 (hereinafter the "Collateral Order)," ... the Bankruptcy Court approved the compromise between the Debtor and the Service as set forth in the Collateral Agreement. In its Order Confirming

Fifth Amended Joint Plan of Reorganization of MarkAir and MarkAir Express, as Modified, dated June 9, 1993 (hereinafter "Confirmation Order"), the Bankruptcy Court ordered ... that the "protections" afforded the Service under the Collateral Order "shall remain in full force and effect in the event that the Debtor's case is converted to another chapter under the ... Code (or reconverted to Chapter 11) or any subsequent case is filed by or against the Debtor under the Code." ... The Bankruptcy Court further ordered that the "payments heretofore or hereafter made by, or for the benefit of the Debtor pursuant to the stipulations and agreements referenced in the Collateral Order shall be absolute, unconditional, and non-refundable, and shall not, under any conditions, by subject to avoidance or disgorgement to any person or entity, including any successor in interest to, or bankruptcy trustee of the Debtor."

The Debtor failed to meet its obligations under the confirmed plan, and in April 1995, the Debtor filed a second Chapter 11 petition. Subsequently, the Debtor ceased operations, and in November 1995, the case was converted to one under Chapter 7. Thereafter, ARC released its claim against the ARC Collateral, and the United States moved for distribution of the ARC Collateral to the Service pursuant to the terms of the Collateral Agreement.... [T]he Trustee opposed the request and sought to subordinate the Service's lien to pay administrative expenses and other priority creditors under § 724(b).

Docket No. 20 at 4–7 (footnotes omitted).

The Bankruptcy Court

conclud[ed] that § 724(b) was intended to apply to statutory tax liens, and not the contractual type of lien involved in

this case. The meaning of the statute—that is the intent of Congress—is sufficiently ambiguous to permit reference to legislative history. That history shows that, in enacting § 724(b), Congress modified and expanded upon § 67c of the Bankruptcy Act, but did not intend to expand the coverage of the section to reach beyond statutory tax liens. . . .

The IRS is entitled to recover its collateral, the $1.8 million deposit and accrued interest.

*See* Docket No. 17, Ex. 11 at 2. MarkAir disagreed with the Bankruptcy Court's decision and its interpretation and application of 11 U.S.C. § 724(b) and appealed it to this Court. *See* Docket No. 17 (Appeal); 20 (Opp'n); 24 (Reply).[1] MarkAir argues that "the IRS' judicial lien, which secures an allowed claim for a tax, is a 'lien' within the meaning of § 724(b) and is subject to tax lien subordination." *See* Docket No. 17 at 36. The Service argues that § 724(b) only applies to tax liens, which is a type of statutory lien and thus the contractual and judicial lien at issue here is not subject to subordination under § 724(b). *See* Docket No. 20 at 7–13.

## DISCUSSION

### I. Standard of Review

The Court must "review the bankruptcy court's conclusions of law de novo and must uphold its findings of fact unless they are clearly erroneous." *See In re Video Depot, Ltd.*, 127 F.3d 1195, 1197 (9th Cir. 1997). If there are no disputed factual issues, "[t]he bankruptcy court's grant of summary judgment is also reviewed de

novo." *See In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 828 (9th Cir.2001).

### II. Statutory and Judicial Liens

■ The Bankruptcy Code defines some of the terms at issue in the case at bar. " '[L]ien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

'[S]tatutory lien' means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

*Id.* § 101(53).[2] " '[J]udicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Id.* § 101(36).

Various courts have noted that a tax lien is a type of statutory lien. *See In re Filipovits*, 1995 WL 724520, at *1 (Bankr. D.Md. Sept.20, 1995) ("A tax lien is a statutory lien; and it is not a judicial lien."); *In re Carolina Resort Motels, Inc.*, 51 B.R. 447, 450 (Bankr.D.S.C.1985) ("[A] tax lien is a statutory lien."); *In re E.W. Shields, Inc.*, 34 B.R. 44, 45 (Bankr.D.Or. 1983) ("[T]ax liens are statutory liens."). Moreover, leading treatises on bankruptcy law have agreed that a tax lien is a statutory lien. For example, *Collier on Bankruptcy* states that

---

1. As this is an appeal from a final decision of the United States Bankruptcy Court for the District of Alaska, the Court has jurisdiction under 28 U.S.C. § 158(a)(1). *See* 28 U.S.C. § 158(a)(1).

2. "A statutory lien is a lien that arises strictly by operation of law without either the consent

of the debtor or the involvement of a court in its creation. Typical statutory liens are mechanics' liens and tax liens." 1 *Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin On Bankruptcy*, § 6.02[D][2] (4th ed.2001) (footnote omitted).

[t]he essence of the definition in section 101(53) is the need, or lack of need, for an agreement or judgment to create the lien. If the lien arises by force of statute, without any prior consent between the parties or judicial action, it will be deemed a statutory lien.... If the creation of the lien is dependent upon an agreement, it is a security interest even though there is a statute which may govern many aspects of the lien. The fact that a statute describes the characteristics and effects of a lien does not by itself make the lien a statutory lien.... Section 101(53) defines statutory liens to specifically exclude both judicial liens and security interest, thereby alleviating much confusion. The judicial lien is a creature of statute and is not dependent upon an agreement between the parties. More significantly, however, a judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding.

Good examples of statutory liens are ... tax liens[.]

*See* 2 *Collier On Bankruptcy,* ¶ 101.53 (Lawrence P. King ed., 15th ed.2001) (footnotes omitted). Similarly, *Ginsberg and Martin on Bankruptcy* state that

[t]ypical statutory liens are mechanics' liens and tax liens. Such liens survive against exempt property to the extent they are valid under nonbankruptcy law and stand up against the trustee's avoiding powers. In effect, the Bankruptcy Code is making a policy decision in favor of the ... tax collector over the debtor's need for sufficient property to make a fresh start.

*See Ginsberg & Martin, supra* § 6.02[D][2] (footnotes omitted). Blacks Law Dictionary defines a tax lien as

[a] statutory lien, existing in favor of the state or municipality, upon the lands of a person charged with taxes, binding the same either for the taxes assessed upon the specific tract of land or (in some jurisdictions) for all the taxes, due the individual, and which may be foreclosed for non-payment, by judgment of a court or sale of the land.

*See Blacks Law Dictionary* 1459 (6th ed.1990).

It would then appear that the lien described in 11 U.S.C. § 724(b) is a statutory lien to the extent that it is a tax lien. *See* 11 U.S.C. § 724(b). As the parties agree that the Service holds a contractual and judicial lien as opposed to a statutory lien, *see* Docket No. 17, Ex. 3, 11 U.S.C. § 724(b) is not applicable to the case at bar unless the type of lien described in 11 U.S.C. § 724(b) is something other than a tax lien. *See* Docket Nos. 17 at 5; 20 at 2–13. It is thus necessary for the Court to determine whether the lien at issue in 11 U.S.C. § 724(b) is a tax lien.

## III. Statutory Construction

### A. Plain Language

 [C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.

*Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254, 112 S.Ct. 1146 (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

Thus, when interpreting a bankruptcy statute, courts must first look to the plain language of the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

"[I]n statutes that contain statutory definition sections, it is commonly understood that such definitions establish meaning wherever the terms appear in the same Act." *In re Yochum,* 89 F.3d 661, 666 (9th Cir.1996). "When ... the meaning of a word is clearly explained in a statute, courts are not at liberty to look beyond the statutory definition." *United States v. Smith,* 155 F.3d 1051, 1057 (9th Cir.1998). "In the absence of statutory definition, a statutory term will be accorded its ordinary meaning." *Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142, 1145 (9th Cir.1998). Moreover,

> [p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme. When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or subsections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole.

*See United States v. Hanousek,* 176 F.3d 1116, 1120 (9th Cir.1999) (internal quotations and citations omitted). "[A] word is known by the company it keeps (the doctrine of *noscitur a sociis).* This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Con-gress." *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (internal quotations omitted).[3] However, "if the statute is ambiguous, we consult the legislative history, to the extent that it is of value, to aid in our interpretation." *See Merkel v. Comm'r Internal Revenue,* 192 F.3d 844, 848 (9th Cir. 1999) (internal quotations omitted).

The statute at issue here, 11 U.S.C. § 724, provides that

> (a) The trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title.
>
> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
>
> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
>
> (2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>
> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph(2) of this subsection;
>
> (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

---

**3.** The rule guided our earlier interpretation of the word "security" under the 1934 Act. The 1934 Act defines the term "security" to mean, *inter alia,* "any note." We concluded, nevertheless that, in context the phrase "any note" should not be interpreted to mean literally "any note," but must be understood against the background of what Congress was attempting to accomplish in enacting the Securities Acts.
*Gustafson,* 513 U.S. at 575, 115 S.Ct. 1061 (internal quotation omitted).

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

(c) If more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall be in the same order as distribution to such holders would have been other than under this section.

(d) A statutory lien the priority of which is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code of 1986 shall be treated under subsection (b) of this section the same as if such lien were a tax lien.

*See* 11 U.S.C. § 724.

It would appear that 11 U.S.C. § 724(b) applies to property that is subject to a tax lien. Subsection (b) provides for distribution of the property subject to the lien, *see id.* § 724(b)(1)-(6), and the subsections refer to the amount secured by the tax lien. *See id.* Additionally, analyzing each section, *see, e.g.,* § 724(d), and construing the statute as whole, reveals that the lien described in § 724(b) is a statutory tax lien. Thus, a reasonable interpretation of the plain language reveals that the 11 U.S.C. § 724(b) applies to tax liens. Various courts and scholars agree. *See Pearlstein v. United States Small Bus. Admin.,* 719 F.2d 1169, 1175 (D.C.Cir.1983) ("Section

724(b) subordinates tax liens to certain prior claims");[4] *In re Southeast R.R. Contractors, Inc.,* 235 B.R. 619, 624 n. 4 (Bankr.E.D.Tenn.1996) ("11 U.S.C. § 724(b) provides that property of the estate subject to certain tax liens may be used to pay the holders of priority claims set out in 11 U.S.C. § 507(a)(1)-(7)."); *In re A.G. Van Metre, Jr., Inc.,* 155 B.R. 118, 122 (Bankr.E.D.Va.1993) ("The result of these provisions is to subordinate payment of statutory tax liens to the payment of administrative expenses (up to the amount of the tax liens) while leaving senior consensual lienholders, junior consensual lienholders and holders of unsecured claims undisturbed."); 6 *Collier,* ¶ 724.03, at 724–8 ("Section 724(b) provides a mechanism for subordinating tax liens to the payment of certain priority claims."); Judith Greenstone Miller, *Response to Government (Non–Tax) Working Group Amended Proposal # 2,* 102 Com. L.J. 205, 205 (1997) ("Section 724(b) changes the order of distribution when the personal and real property of the estate is subject to a valid federal, state or local tax lien which arose prior to the commencement of the case.)." Nonetheless, to the extent that § 724(b) is ambiguous because of the possible construction that the language "such tax lien" in the subsections refers to a type of lien other than a traditional statutory tax lien and could encompass other types of liens, it is instructive to refer to the legislative history.

**B. Legislative History**

 The Supreme Court has stated that "[i]n surveying legislative history we

---

4. The court in *Pearlstein v. United States Small Business Administration* stated that

[Section 724(b)] sets forth in detail the consequences of this subordination on the order of distribution to all claimants against property in an estate (or its proceeds) that is subject to a tax lien.

. . . .

These provisions specify the effect of the subordination of a tax lien on the various other types of secured and unsecured claims. They do not, however, attempt otherwise to change the order of distribution that would exist among those nontax claims apart from the subordination of the tax lien. *Pearlstein,* 719 F.2d at 1175.

have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *See Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (internal quotations omitted). Analyzing the committee reports pertaining to 11 U.S.C. § 724(b) reveals that Congress intended that section to apply to tax liens. For example, the Committee Report from the Judiciary Committee in the House of Representatives stated that

> [s]ubsection (b) governs tax liens. It is derived from section 67c(3)[5] of the Bankruptcy Act, without substantial modification in result. It subordinates tax liens to administrative expense and wage claims, and solves certain circuity of liens problems that arise in connection with the subordination. The order of distribution of property subject to a tax lien is as follows: First, to holders of liens senior to the tax lien; second, to administrative expenses, wage claims, and consumer creditors that are granted priority, but only to the extent of the amount of the allowed tax claim secured by the lien. In other words, the priority claimants step into the shoes of the tax collector. Third, to the tax claimant, to the extent that priority claimants did not use up his entire claim. Fourth, to junior lien holders. Fifth, to the tax collector to the extent that he was not paid under paragraph (3). Finally, any remaining property goes to the estate. The result of these provisions are to leave senior and junior lienors and holders of unsecured claims undisturbed. If there are any liens that are equal in status to the tax lien, they share pari passu with the tax lien under the distribution provisions of this subsection.

*See* H.R.Rep. No. 95–595, at 382 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6338; *see also Pearlstein,* 719 F.2d at 1171–75; 6 *Collier On Bankruptcy,* ¶ 724.LH[2] at 724–19.[6] Thus, the legislative history of 11 U.S.C. § 724(b) makes it evident that 11

---

**5.** "Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 104 of this title." 11 U.S.C. § 107(c)(3) (1970) (codifying 67c(3) of the Bankruptcy Act). "[N]onstatutory tax liens [were] not affected by § 67c." 4 *Collier on Bankruptcy,* ¶ 67.27, at 377. "[T]he effect of section 67c is limited to statutory liens and does not include consensual liens." S.Rep. No. 89–1159 (1966), U.S.Code Cong. & Admin.News 1966 p. 2456.

**6.** Section 724(b) was derived from section 67c(3) of the Bankruptcy Act.

It continues the longstanding policy under the Act of subordinating tax lien claims to certain priority claims. Section 724(b) is considerably broader, however, than was section 67c(3). Section 67c(3) applied only to tax liens on personal property unaccompanied by a change of possession. It did not apply to tax liens on real property nor did it apply to tax liens on personal property where the lien holder obtained possession of the property prior to bankruptcy. In contrast, section 724(b) applies to all types of property and is not dependent on possession.

Section 67c(3) subordinated payment of the tax lien claims to priority claims arising under clauses (1) and (2) of section 64 of the Act. These two clauses covered administrative expenses and wage priorities. It then directed payment of excess proceeds to the holder of the subordinated tax lien. The statute was not clear as to the status of junior liens on the property with the result that a circuity of liens problem often arose. This was corrected under section 724(b) which specifically provides for the treatment of junior liens vis-a-vis the holder of the displaced tax lien.

6 *Collier On Bankruptcy,* ¶ 724.LH[2] (footnote omitted).

U.S.C. § 724(b) specifically applies to statutory tax liens.

### CONCLUSION

Because 11 U.S.C. § 724(b) pertains to statutory tax liens and not to the contractual and judicial lien in the case at bar, the Court shall affirm the Bankruptcy Court's decision.

**IT IS THEREFORE ORDERED:**

The appeal at **Docket No. 17** is **DENIED**. The Bankruptcy Court's decision is **AFFIRMED**.